Andre Brigham YOUNG, Petitioner,

v.

David WESTON, Superintendent
of the Special Commitment
Center, Respondent.

No. C94–480C.

United States District Court,
W.D. Washington,
at Seattle.

Aug. 25, 1995.

Robert Charles Boruchowitz, Seattle, WA, for petitioner.

Sarah Sappington, Seattle, WA, for respondent.

## ORDER ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

COUGHENOUR, District Judge.

This matter comes before the Court on cross-motions for summary judgment. This case was previously referred to Magistrate Judge Philip K. Sweigert, who heard oral argument March 24, 1995. Neither party requests further oral argument. Having reviewed the relevant pleadings, memoranda, affidavits, and other documents on file, and having reviewed the transcript of the oral argument, the Court now finds and concludes as follows:

### I. BACKGROUND

Andre Brigham Young is currently incarcerated at the Special Commitment Center in Monroe, Washington, serving an indefinite term of involuntary commitment pursuant to Washington's sexually violent predator statute, Wash.Rev.Code § 71.09. He petitions the Court for a writ of habeas corpus, arguing that his confinement is unconstitutional

and that the statute is unconstitutional both facially and as applied.

The parties have filed cross-motions for summary judgment on purely legal issues. Petitioner Young requests an evidentiary hearing in the event the issues of law are not resolved in his favor. Because the Court agrees with Young that the statute is unconstitutional on its face, an evidentiary hearing is unnecessary. Nor is it necessary to address the State's argument that one of Young's twenty-two claims, the claim that the cumulative effect of evidentiary errors in the trial court violated his right to a fair trial, has not been exhausted.

## II. THE SEXUALLY VIOLENT PREDATOR STATUTE

The Community Protection Act of 1990 comprises fourteen separate sections addressing various issues related to violent crimes, particularly violent sex offenses.[1] Provisions of the Act increase the sentences for sex offenders, require community registration of sex offenders, and provide for compensation for victims, among other things.

The Act also includes the Sexually Violent Predator statute, codified at Wash.Rev.Code § 71.09 (hereafter "Statute"). The Statute authorizes the indefinite commitment of defendants determined to be "sexually violent predators." In formulating the Statute, the Legislature was guided by the following findings:

> The legislature finds that a small but extremely dangerous group of sexually violent predators exist who do not have a mental disease or defect that renders them appropriate for the existing involuntary treatment act, chapter 71.05 RCW, which is intended to be a short-term civil commit-

ment system that is primarily designed to provide short-term treatment of individuals with serious mental disorder and then return them to the community. In contrast to persons appropriate for civil commitment under chapter 71.05 RCW, sexually violent predators generally have antisocial personality features which are unamenable to existing mental illness treatment modalities and those features render them likely to engage in sexually violent behavior. The legislature further finds that sex offenders' likelihood of engaging in repeat acts of predatory sexual violence is high. The existing involuntary commitment act, chapter 71.05 RCW, is inadequate to address the risk to reoffend because during confinement these offenders do not have access to potential victims and therefore they will not engage in an overt act during confinement as required by the involuntary treatment act for continued confinement. The legislature further finds that the prognosis for curing sexually violent offenders is poor, the treatment needs of this population are very long term, and the treatment modalities for this population are very different than the traditional treatment modalities for people appropriate for commitment under the involuntary treatment act.

Wash.Rev.Code § 71.09.010.

A "sexually violent predator" is a person "who has been convicted of or charged with a crime of sexual violence and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in predatory acts of sexual violence." Wash.Rev.Code § 71.09.020(1). "Sexually violent offenses" include not only rape, rape of a child, and child molestation, but also such

1. The Act was adopted by the Washington Legislature after several widely publicized acts of sexual violence provoked outrage among the public. In what is perhaps the most often cited incident, Earl Shriner, a man with a long history of violent sex offenses, assaulted and sexually mutilated a young boy. In response to this and other incidents, Governor Booth Gardner assembled the Task Force on Community Protection to evaluate and propose changes in the law. The task force found "gaps" in the existing system of determinate, but short, sentencing ranges and indefinite, but inapplicable, involuntary commitment laws.

*See Task Force on Community Protection, Final Report to Booth Gardner, Governor, State of Washington*, II–5–6, II–21 (1989); *see also*, D. Boerner, *Confronting Violence: In the Act and In the Word*, 15 U. PUGET SOUND L.REV. 525 (1992). A detailed account of the role of the Task Force in propounding the legislation is unnecessary here. The history of the Sexually Violent Predator Statute and the prevailing climate in which it was adopted is analyzed in great detail in *Predators and Politics: A Symposium on Washington's Sexually Violent Predators Statute*, 15 U. PUGET SOUND L.REV. 507 (1992).

offenses as murder, assault, kidnapping, and burglary, when the offenses are determined to have been "sexually motivated." Wash. Rev.Code § 71.09.020(4).

The Statute does not attempt to define the term "personality disorder." However, "mental abnormality" is defined as "a congenital or acquired condition affecting the emotional or volitional capacity which predisposes the person to the commission of criminal sexual acts in a degree constituting such person a menace to the health and safety of others." Wash.Rev.Code § 71.09.020(2). "Predatory" acts, for purposes of the Statute, are "acts directed towards strangers or individuals with whom a relationship has been established or promoted for the primary purpose of victimization." Wash.Rev.Code § 71.09.020(3).

The Statute allows the State to initiate the involuntary commitment process when a person's sentence for a sexually violent offense is about to expire, or when a person who was incompetent to stand trial on a charge of a sexually violent offense or who was found not guilty by reason of insanity of a sexually violent offense is about to be released. Wash.Rev.Code § 71.09.030. To initiate the commitment process, the county prosecutor or the attorney general files a petition alleging that the person is a "sexually violent offender." *Id.* A judge determines whether there is probable cause to believe that the person is a sexually violent predator. Wash. Rev.Code § 71.09.030. If so, the judge directs that the person be taken into custody and transferred to a facility for evaluation "by a person deemed to be professionally qualified to conduct such an examination pursuant to rules developed by the department of social and health services." *Id.*

A person charged under the statute is entitled to a trial within 45 days after the filing of the petition. Wash.Rev.Code § 71.09.050. The detainee has the right to retained or appointed counsel and the right to retained or appointed experts. Both parties have a right to a jury trial. *Id.* The Statute further provides that

The court or jury shall determine whether, beyond a reasonable doubt, the person is a sexually violent predator.... If the court or jury determines that the person is a sexually violent predator, the person shall be committed to the custody of the department of social and health services in a secure facility for control, care and treatment until such time as the person' mental abnormality or personality disorder has so changed that the person is safe to be at large.

Wash.Rev.Code 71.09.060(1). The Statute forbids detaining persons classified as sexually violent predators in state mental facilities or regional rehabilitation centers, "because these institutions are insufficiently secure for this population." Wash.Rev.Code § 71.09.060(3). Rather, the Statute allows confinement only in facilities located within correctional institutions. *Id.;* Wash.Rev. Code § 10.77.220.

The Statute sets forth no particular requirements for treatment of the detainee, except that care and treatment must conform to "constitutional requirements." Wash.Rev. Code § 71.09.080. Once each year, the mental condition of a person committed under the Statute is evaluated. Wash.Rev.Code § 71.09.070. A report of this examination is provided to the court. *Id.*

To obtain release, the detainee must petition the court. If it appears to the Secretary of the Department of Social and Health Services that "the person's mental abnormality or personality disorder has so changed that the person is not likely to commit predatory acts of sexual violence if released," then the Secretary authorizes the detainee to file a petition. Wash.Rev.Code § 71.090.90. The court must hold a hearing within 45 days. *Id.* At the hearing, the State bears the burden of proving beyond a reasonable doubt that the petitioner's mental condition "remains such that the petitioner is not safe to be at large and that if discharged is likely to engage in predatory acts of sexual violence." *Id.*

The detainee may petition the court for release even if the Secretary has not authorized the petition. Wash.Rev.Code § 71.09.090(2). Once each year, the Secretary is required to provide the detainee written notice of his or her right to petition

without the Secretary's approval. *Id.* Such notice must be accompanied by a waiver of rights. If the detainee does not waive the right to petition, the court must hold a show cause hearing "to determine whether facts exist that warrant a hearing on whether the person's condition has so changed that he or she is safe to be at large." *Id.* Although the detainee has a right to counsel at the hearing, the detainee has no right to be present. *Id.* If the court concludes that there is probable cause, it must hold a hearing similar to the original commitment hearing, affording the detainee the right to appointed or retained counsel and experts, and affording both parties the right to a jury trial. *Id.*

Other than these annual review procedures, the detainee has no right to a hearing on a petition for release "unless the petition contains facts upon which a court could find that the condition of the petitioner had so changed that a hearing was warranted." Wash.Rev.Code § 71.09.100. Absent such a showing, the court is required to summarily deny the petition. *Id.*

### III. PROCEDURAL HISTORY

Andre Brigham Young was convicted of rape on three occasions over a period spanning some twenty-two years. On October 24, 1990, one day prior to his scheduled release from prison on a 1985 conviction, the State filed a petition under the Statute. Young was transferred to the Special Commitment Center at the reformatory in Monroe, Washington, and held until his trial in February, 1991. The jury concluded that Young was a sexually violent predator, and he was committed. He filed a personal restraint petition, which was denied. On direct appeal from the trial court, a divided Washington Supreme Court held that the Statute is not unconstitutional. *In re Personal Restraint of Young,* 122 Wash.2d 1, 857 P.2d 989 (1993).

### IV. ANALYSIS

Young asserts that the Statute is unconstitutional on a variety of grounds. Of these, the Court focuses on three: the violation of the substantive due process component of the Fourteenth Amendment; the violation of the Ex Post Facto Clause of Article 1, Section 10 of the Constitution; and the violation of the Double Jeopardy Clause of the Fifth Amendment.

### A. Substantive Due Process

■ The Due Process Clause protects persons from the deprivation of life, liberty, or property without due process of law. U.S. Const. amend. V, XIV. The Due Process Clause protects individuals on both procedural and substantive levels. Substantive due process "prevents the government from engaging in conduct that 'shocks the conscience,' *Rochin v. California,* 342 U.S. 165, 172, 72 S.Ct. 205, 209 [96 L.Ed. 183] (1952), or interferes with rights 'implicit in the concept of ordered liberty,' *Palko v. Connecticut,* 302 U.S. 319, 325–26, 58 S.Ct. 149, 152 [82 L.Ed. 288] (1937)." *United States v. Salerno,* 481 U.S. 739, 747, 107 S.Ct. 2095, 2101, 95 L.Ed.2d 697 (1987). This substantive component of the Due Process Clause "bars certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them.' " *Foucha v. Louisiana,* 504 U.S. 71, 112 S.Ct. 1780, 1785, 118 L.Ed.2d 437 (1992) (quoting *Zinermon v. Burch,* 494 U.S. 113, 125, 110 S.Ct. 975, 983, 108 L.Ed.2d 100 (1990)). Infringement of a fundamental liberty interest must be narrowly tailored to serve a compelling state interest. *Reno v. Flores,* —— U.S. ——, ——, 113 S.Ct. 1439, 1447, 123 L.Ed.2d 1 (1993).

■ At the heart of the liberty interests protected from arbitrary government actions is freedom from bodily restraint. *Youngberg v. Romeo,* 457 U.S. 307, 316, 102 S.Ct. 2452, 2458, 73 L.Ed.2d 28 (1982).

As incarceration of persons is the most common and one of the most feared instruments of state oppression and state indifference, we ought to acknowledge at the outset that freedom from this restraint is essential to the basic definition of liberty in the Fifth and Fourteenth Amendments of the Constitution.

*Foucha,* 504 U.S. at 90, 112 S.Ct. at 1791 (Kennedy, J., dissenting).

■ For this reason, the Supreme Court has carefully circumscribed the instances in

which the state may, for non-punitive reasons, detain or incarcerate. an individual. For example, in times of war or insurrection, the government may detain individuals whom it believes are dangerous. *Moyer v. Peabody,* 212 U.S. 78, 84–85, 29 S.Ct. 235, 236–37, 53 L.Ed. 410 (1909). And, under certain circumstances, individuals may be detained pending arraignment, trial, or deportation, on the grounds that such individuals are dangerous to the community, dangerous to witnesses, or that they present flight risks. *See, e.g., Flores,* —— U.S. at ——, ——, 113 S.Ct. at 1447–1449 (approving regulatory detention of alien juveniles pending deportation); *Salerno,* 481 U.S. at 749, 107 S.Ct. at 2103 (approving pretrial detention of individuals found likely to be a danger to the community pursuant to the Bail Reform Act of 1984); *Schall v. Martin,* 467 U.S. 253, 104 S.Ct. 2403, 81 L.Ed.2d 207 (1984) (approving post-arrest detention of juveniles found to present a continuing danger to the community); *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975) (approving post-arrest detention of individual pending probable cause determination by a neutral magistrate); *Carlson v. Landon,* 342 U.S. 524, 537–42, 72 S.Ct. 525, 532–35, 96 L.Ed. 547 (1952) (finding no absolute barrier to detention of potentially dangerous resident aliens pending deportation).

■ The Supreme Court has also held that the state has authority to protect the community from the dangerous tendencies of some individuals who are mentally ill. *Addington v. Texas,* 441 U.S. 418, 426, 99 S.Ct. 1804, 1809, 60 L.Ed.2d 323 (1979); *Jackson v. Indiana,* 406 U.S. 715, 729–737, 92 S.Ct. 1845, 1854–1858, 32 L.Ed.2d 435 (1972). Absent clear and convincing evidence of both mental illness and dangerousness, however, detention is impermissible. *Foucha,* 504 U.S. at 80, 112 S.Ct. at 1786; *see also, Jones v. United States,* 463 U.S. 354, 368, 103 S.Ct. 3043, 3052, 77 L.Ed.2d 694 (1983); *O'Connor v. Donaldson,* 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975) (holding confinement of harmless mentally ill person is unconstitutional).

The State does not argue that the Sexually Violent Predator Statute is comparable to the pretrial detention schemes set forth in *Salerno. See Salerno,* 481 U.S. at 749, 107 S.Ct. at 2102. Such an argument would, of course, fail: *Salerno* and its ancestors authorize pretrial detention of dangerous persons for stringently limited periods of time. *See id.,* at 748, 107 S.Ct. at 2101; *Foucha,* 504 U.S. at 82, 112 S.Ct. at 1787; *cf. Allen v. Illinois,* 478 U.S. 364, 370, 106 S.Ct. 2988, 2992, 92 L.Ed.2d 296 (1986) (noting, in the context of determining whether a proceeding is criminal or civil for purposes of the Self–Incrimination Clause, that detainee "may be released after the briefest time in confinement"). This is quite obviously not true of the Sexually Violent Predator Statute. Commitment pursuant to the Statute is indefinite. Indeed, given the State's open acknowledgement of the poor treatment prospects for detainees, prolonged incarceration is to be expected.

The State argues, however, that the Statute passes constitutional muster as a traditional civil commitment scheme, such as that analyzed in *Addington.* This argument also fails. The essential component missing from the Sexually Violent Predator Statute is the requirement that the detainee be mentally ill. Like the scheme rejected in *Foucha,* the Statute here permits indefinite incarceration based on little more than a showing of potential future dangerousness. *See Foucha,* 504 U.S. at 82, 112 S.Ct. at 1787.

The absence of a mental illness requirement is apparent both in the statutory language and in its legislative history. First, the legislature's findings expressly disavow the notion that the targeted group of persons are mentally ill. As explained in Wash.Rev. Code § 71.09.010, the target group is made up of individuals "who do not have a mental disease or defect that renders them appropriate for the existing involuntary treatment act." Unlike persons with serious mental disorders, the legislature concluded, sexual predators "have antisocial personality features which are unamenable to existing mental illness treatment modalities," and for which the prognosis of cure is poor. *Id.*

The abandonment of a mental illness requirement is further revealed in the statutory definitions. As noted above, a "sexually

violent predator," for purposes of the Statute, is a person who, among other things, "suffers from a mental abnormality or personality disorder." Wash.Rev.Code § 71.09.020(1). Amicus, the Washington State Psychiatric Association, explains that the term "mental abnormality" has neither a clinically significant meaning nor a recognized diagnostic use among treatment professionals.[2] Even accepting the statutory definition of "a congenital or acquired condition affecting the emotional or volitional capacity which predisposes the person to the commission of criminal sexual acts in a degree constituting such person a menace to the health and safety of others," Wash.Rev.Code § 71.09.020(2), the term establishes an unacceptable tautology: a sexually violent predator suffers from a mental condition that predisposes him or her to commit acts of sexual violence.

The concept of a "personality disorder" is similarly unenlightening. The term is undefined in the Statute. In the psychiatric lexicon, a personality disorder is characterized by maladaptive behavior. *See* Amicus Brief, Washington State Psychiatric Association, at 7; *DSM–IV* at 630. As Amicus notes, there are a wide range of personality disorders, none of which is peculiar to sex offenders. As with the concept of mental abnormality, the Statute's use of "personality disorder" evokes a circular definitional structure in which the only observed characteristic of the disorder is the predisposition to commit sex crimes.

Whatever doubt might remain after reviewing the Statute itself is resolved by the legislative history. The Governor's Task Force on Community Protection, whose proposed bill was substantially similar to that enacted, plainly intended to craft legislation to permit the involuntary commitment of persons who are not mentally ill:

> Civil commitment under the involuntary treatment law allows indefinite commitment, but is quite restrictive in its definitions. Under current laws, sexually violent predators only qualify for civil detention when a mental illness or mental disorder is present. The Task Force examined the histories of some individual violent predators who had been judged not to have a mental illness or mental disorder and therefore were not detainable.

*Task Force on Community Protection, Final Report to Booth Gardner, Governor, State of Washington,* II–21 (1989).[3]

Thus, this is not an enactment designed to provide for the commitment of dangerous mentally ill or mentally disordered persons. Rather, the Statute targets persons with "antisocial personality features." Wash.Rev. Code § 71.09.010. As in *Foucha,* persons within the Statute's reach have "an antisocial personality, a condition that is not a mental disease and that is untreatable." *Foucha,* 504 U.S. at 75, 112 S.Ct. at 1782. But the mere presence of antisocial personality, or other personality disorder falling short of mental illness, is constitutionally insufficient to support indefinite confinement. As the Court explained in *Foucha:*

> [T]he State asserts that because Foucha once committed a criminal act and now has an antisocial personality that sometimes leads to aggressive conduct, a disorder for which there is no effective treatment, he

---

**2.** The choice of "mental abnormality," as opposed to "mental illness" or "mental disorder" appears to be deliberate. Washington's involuntary treatment statute, Wash.Rev.Code § 71.05 allows commitment of persons with "medical disorders," a syndrome or pattern well-recognized among the psychiatric community. American Psychiatric Association, *Diagnostic and Statistical Manual,* at xxiv (Fourth ed. 1994). The legislature's decision to employ a term unrecognized in the psychiatric community, coupled with its provision of a definition of no value to treatment professionals is an indication that the State did not intend the Statute to capture only the seriously mentally ill.

**3.** Indeed, in testimony before the legislature, one member of the Task Force explained that Washington's traditional civil commitment law, Wash. Rev.Code § 71.05, et seq., was inappropriate for Earl Shriner, the perpetrator of the highly publicized assault and mutilation of a young boy, because he was not mentally ill. SENATE LAW & JUSTICE COMMITTEE, Testimony of Professor David Boerner at 1 (Jan. 10, 1990). In describing Earl Shriner, Professor Boerner stated "Mr. Shriner is not mentally ill as that term is defined. He is clearly a problem, and clearly very dangerous, but he doesn't suffer from a classic mental illness."

may be held indefinitely. This rationale would permit the State to hold indefinitely any other insanity acquittee not mentally ill who could be shown to have a personality disorder that may lead to criminal conduct. The same would be true of any convicted criminal, even though he has completed his prison term. It would also be only a step away from substituting confinements for dangerousness for our present system which, with only narrow exceptions and aside from permissible confinements for mental illness, incarcerates only those who are proved beyond reasonable doubt to have violated a criminal law. *Foucha,* at 82, 112 S.Ct. at 1787.

■ The Court concludes that the Sexually Violent Predator Statute, allowing as it does the indefinite confinement of persons who are not mentally ill, violates the substantive protections of the Due Process Clause. Predictions of dangerousness alone are an insufficient basis to continue indefinitely the incarceration of offenders who have completed their prison terms.

## B. Ex Post Facto

■ Article I of the United States Constitution provides that the states may not pass any ex post facto law. In interpreting the scope of the ex post facto prohibition, courts have long been guided by the words of Justice Chase in *Calder v. Bull,* 3 (U.S.) Dall. 386, 1 L.Ed. 648 (1798). *See, e.g., Collins v. Youngblood,* 497 U.S. 37, 45, 110 S.Ct. 2715, 2721, 111 L.Ed.2d 30 (1990); *Miller v. Florida,* 482 U.S. 423, 428, 107 S.Ct. 2446, 2450, 96 L.Ed.2d 351 (1987). Justice Chase explained his understanding of what fell within the scope of the prohibition:

■ Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. [2] Every law that aggravates a crime, or makes it greater than it was, when committed. [3] Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. [4] Every law that alters the legal rules of evidence, and receives less, or different testimony, than the law required at the

time of the commission of the offense, in order to convict the offender.

*Calder,* 3 (U.S.) Dall. at 390 (emphasis omitted). The ex post facto prohibition ensures that legislative acts "give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed." *Weaver v. Graham,* 450 U.S. 24, 28, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981). In addition, the ban "restricts governmental power by restraining arbitrary and potentially vindictive legislation." *Id.*

Two critical elements must be present for a criminal or penal law to be ex post facto: (1) "it must be retrospective, that is, it must apply to events occurring before its enactment," and (2) "it must disadvantage the offender affected by it." *Weaver,* at 28, 101 S.Ct. at 964. The debate here is not whether the Sexually Violent Predator Statute is retrospective or disadvantageous in its application to Young. Rather, the debate concerns whether the Statute is penal or criminal in nature.

■ The parties cite no Supreme Court decision directly addressing the issue here: whether, for purposes of the ex post facto clause, a law is criminal or penal, as opposed to civil. The Court notes, at the outset, that by labeling the Statute "civil," the State "does not thereby immunize it from scrutiny" under the clause. *See Collins,* 497 U.S. at 45, 110 S.Ct. at 2721. "Subtle ex post facto violations are no more permissible than overt ones.... [T]he constitutional prohibition is addressed to laws, 'whatever their form,' which make innocent acts criminal, alter the nature of the offense, or increase the punishment." *Id.* (quoting *Beazell v. Ohio,* 269 U.S. 167, 170, 46 S.Ct. 68, 68–69, 70 L.Ed. 216 (1925)).

■ Where the legislature has indicated an intention to establish a civil scheme, the Court must consider whether that scheme is "so punitive either in purpose or effect as to negate that intention." *United States v. Ward,* 448 U.S. 242, 248, 100 S.Ct. 2636, 2641, 65 L.Ed.2d 742 (1980). Only the clearest proof will suffice to establish the unconstitutionality of a statute on this ground. *Id.*

■ The Supreme Court has formulated a non-exclusive list of factors to consider in determining whether a statute is penal or regulatory in the context of the procedural safeguards of the Fifth and Sixth Amendments:

Whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of *scienter*, whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned are all relevant to the inquiry, and may often point in differing directions.

*Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 83 S.Ct. 554, 567, 9 L.Ed.2d 644 (holding unconstitutionally punitive certain statutes that deprived individuals of citizenship without Fifth and Sixth Amendment protections); *see also Allen,* 478 U.S. 364, 106 S.Ct. 2988 (analyzing the issue of whether a commitment statute is civil or criminal for purposes of the Self–Incrimination Clause of the Fifth Amendment). These factors are equally relevant in considering whether the Sexually Violent Predator Statute is civil or criminal for purposes of the Ex Post Facto Clause. *See Artway v. Attorney General,* 876 F.Supp. 666, 689 (D.N.J.1995).

■ The Court concludes that the Statute cannot be classified as civil, considering the relevant factors. First, there is no dispute that Statute subjects individuals to an affirmative restraint. The Statute entails a complete loss of freedom for an indefinite period of time. The potential length of this confinement, and the periodic opportunities for release, are also relevant considerations. In *Allen,* the Supreme Court held that Illinois' Sexually Dangerous Persons Act was civil, partly because, in addition to providing treatment, the Act "established a system under which committed persons may be released after the briefest time in confinement," and were free to "apply for release at

any time." *Allen,* 478 U.S. at 370, 106 S.Ct. at 2992. The Illinois act provides for case reviews every six months. Here, however, a detainee's case is reviewed only once per year. And although the statute purports to allow a detainee to petition for release at any time, in fact a petition is subject to a full adversarial hearing only if (1) the Secretary of the Department of Social and Health Services authorizes the petition or (2) the detainee establishes probable cause that he is no longer dangerous. Further, unlike the Illinois act, Washington's Statute does not provide for conditional release of offenders who cannot be determined with certainty to be dangerous. The lack of conditional release provisions can be expected to result in longer terms of confinement.

Second, the Statute applies to behavior that is already criminal. Indeed, it is expressly limited in its application to persons who have been convicted of a crime or who have been charged with a crime but found incompetent to stand trial or found not guilty by reason of insanity. *Cf. Artway,* 876 F.Supp. at 691.

Third, the Statute, in its operation, will promote the traditional aims of punishment—retribution and deterrence. In *Allen* the Supreme Court determined that because Illinois had "disavowed any interest in punishment" and was focused solely on providing treatment to mentally disordered sex offenders, its commitment statute was civil, rather than criminal. *Allen,* 478 U.S. at 370, 106 S.Ct. at 2992. Central to the Illinois statutory scheme is the requirement that the State elect either punishment or treatment at the time the offender is charged. *See Allen,* at 373, 106 S.Ct. at 2994 ("the State serves its purpose of *treating* rather than punishing sexually dangerous persons"); *People v. Patch,* 9 Ill.App.3d 134, 293 N.E.2d 661, 665 (1972); *People v. Allen,* 107 Ill.2d 91, 89 Ill.Dec. 847, 852, 481 N.E.2d 690, 695 (1985). In sharp contrast, Washington's Sexually Violent Predator Statute requires that the convicted sex offender serve his sentence prior to commitment; the State has no power to initiate proceedings under the Statute until the sentence of the convicted offender "is about to expire, or has expired." Wash.Rev.

Code § 71.09.030. The operation of the Statute is not materially different for persons who are charged with a sex offense but found incompetent to stand trial or found not guilty by reason of insanity. In both instances, the State may initiate proceedings under the Statute only when the person is about to be released or has been released. *Id.* .

Thus, despite the State's claims that the Statute is intended only to provide treatment, the State evinces a keen interest in punishment. It is immaterial, for purposes of this analysis, that the punishment aims are primarily expressed in other Washington laws, rather than being incorporated directly into the Statute. The Statute is inextricably linked to the traditional goals of punishment, because it requires, on its face, that the detainee serve his entire criminal sentence before being committed or treated.

The punishment imperative also undermines the State's purported interest in treating violent sexual predators. The Statute forecloses the possibility that offenders will be evaluated and treated until after they have been punished. Of course, it defies reason to suggest that the mental abnormalities or personality disorders causing violent sexual predation surface only at the termination of a prison term. Common sense suggests that such mental conditions, if they are indeed the cause of sexual violence, are present at the time the offense is committed. Setting aside the question of whether a prison term exacerbates or minimizes the mental condition of a sex offender, it plainly delays the treatment that must constitutionally accompany commitment pursuant to the Statute. The failure of the Statute to provide for examination or treatment prior to the completion of the punishment phase strongly suggests that treatment is of secondary, rather than primary, concern.

The Court concludes that, although there is clearly an alternative purpose to which the Statute may be connected and although indefinite commitment is not necessarily excessive in relation to that purpose, these factors are greatly outweighed by factors favoring the conclusion that the Statute is criminal. As noted above, there is no dispute that, as to Young, the Statute is retrospective and disadvantageous. Accordingly, it stands in violation of the ex post facto prohibition of the Constitution.

## C. Double Jeopardy

 "[T]he Double Jeopardy Clause protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense." *United States v. Halper*, 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487 (1989). The third of these abuses, multiple punishments, is at issue in this case.

 The Double Jeopardy Clause does not apply only to punishment imposed in criminal proceedings; rather, its violation "can be identified only by assessing the character of the actual sanctions imposed on the individual by the machinery of the state." *Halper*, at 446, 109 S.Ct. at 1901.

> In making this assessment, the labels "criminal" and "civil" are not of paramount importance. It is commonly understood that civil proceedings may advance punitive as well as remedial goals, and, conversely, that both punitive and remedial goals may be served by criminal penalties.... [T]he determination whether a given civil sanction constitutes punishment in the relevant sense requires a particularized assessment of the penalty imposed and the purposes that the penalty may fairly be said to serve. Simply put, a civil as well as a criminal sanction constitutes punishment when the sanction as applied in the individual case serves the goals of punishment.... From these premises, it follows that *a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term.*

*Id.* at 447–48, 109 S.Ct. at 1901–02 (emphasis added and citations omitted).

 As explained above, in the Court's analysis of the Ex Post Facto Clause, the Statute at issue here serves the traditional aims of punishment—retribution and deter-

**754**

rence. *Cf. Halper*, at 449, 109 S.Ct. at 1902. The analysis applies equally for purposes of the Double Jeopardy Clause. Having once been punished for the commission of a violent sexual offense, the offender is subject to further incarceration under the Statute's commitment scheme. The punishment imperative embodied in the statutory approach, in addition to the secondary nature of the treatment provisions, renders the Statute an unconstitutional second punishment.

## V. CONCLUSION

The Court concludes that Washington's Sexually Violent Predator Statute, Wash. Rev.Code § 71.09, violates the substantive due process component of the Fourteenth Amendment, the Ex Post Facto Clause, and the Double Jeopardy Clause. The other issues raised in the petition for a writ of habeas corpus need not be addressed.

The writ is GRANTED.

In anticipation of appeal, the Court directs the parties to brief the issue of release pending appeal. Each party shall file a brief on this issue no later than September 5, 1995. The parties may file responsive briefs no later than September 7, 1995. The parties shall indicate whether oral argument is requested.

SO ORDERED.