**Andre Brigham YOUNG, Petitioner–Appellant,**

v.

**David WESTON, Superintendent of the Special Commitment Center, Respondent–Appellee.**

No. 98–35377.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 14, 1999

Filed May 20, 1999

Amended Sept. 16, 1999

Robert Boruchowitz, Defender Association, Seattle, Washington, for the petitioner-appellant.

Sarah Sappington, Assistant Attorney General, Seattle, Washington, for the respondent-appellee.

1. Honorable Robert J. Kelleher, Senior United States District Judge for the Central District of California, sitting by designation.

Before: PREGERSON and THOMPSON, Circuit Judges, and KELLEHER, District Judge.[1]

## ORDER

The opinion filed May 20, 1999 [176 F.3d 1196], is amended as follows:

Slip opinion page 4757, after the paragraph ending with footnote 4, insert:

Actual conditions of confinement may divest a facially valid statute of its "civil" label only upon a showing by the "clearest proof" that the statutory scheme is punitive in its "effect." *Id.* at 2082. As discussed below, we conclude that Young has alleged sufficient facts that, if proved, would constitute such "clear proof."

With this amendment, the petition for rehearing is denied and the suggestion for rehearing en banc is rejected.

## OPINION

PREGERSON, Circuit Judge:

This case involves the constitutionality of Washington State's Sexually Violent Predator Statute as applied to petitioner Andre Brigham Young. Young has been indefinitely confined pursuant to the statute since 1990. He appeals the district court's denial of his petition for writ of habeas corpus. We have jurisdiction under 28 U.S.C. § 2253,[2] and we reverse and remand in part and affirm in part.

## PROCEDURAL HISTORY

This is the second time that this case is before us.

The district court originally granted Young's petition on cross-motions for summary judgment on the ground that the statute, R.C.W. § 71.09 ("Washington stat-

2. Because Young filed his habeas petition in 1994, the Antiterrorism and Effective Death Penalty Act of 1996 does not apply. *See Jeffries v. Wood,* 103 F.3d 827 (9th Cir.1996).

ute" or "statute"), violated the United States Constitution. *See Young v. Weston,* 898 F.Supp. 744 (W.D.Wash.1995) (*"Young I "*). When it granted the petition, the court ruled that the statute, on its face, violated (1) the substantive due process protections of the due process clause because it permits indefinite incarceration without a showing of mental illness, (2) the *ex post facto* clause because it is punitive and applies retrospectively, and (3) the double jeopardy clause because it imposes additional incarceration on a person who has already been punished for the commission of a criminal offense. *See id.* Because the court found the statute to be facially unconstitutional, it denied as unnecessary Young's request for a hearing.

Respondent appealed to this court. While the appeal was pending, the Supreme Court issued *Kansas v. Hendricks,* 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997). In *Hendricks,* the Supreme Court held, *inter alia,* that Kansas's involuntary commitment statute for sexually violent predators ("Kansas statute") did *not* violate the substantive due process, *ex post facto,* or double jeopardy clauses of the United States Constitution. Our court then remanded this matter to the district court for reconsideration in light of *Hendricks. See Young v. Weston,* 122 F.3d 38 (9th Cir.1997) (*"Young II "*).

On remand, the district court received supplemental briefing on the impact of *Hendricks.* After oral argument, but without conducting an evidentiary hearing, the district court denied Young's petition. *See Young v. Weston,* No. CV–94–00480C (W.D. Wash. filed Feb 10, 1998) (*"Young III "*). Young timely appealed.

## DISCUSSION

Young's challenge to his indefinite confinement raises numerous issues, which can be grouped into four general categories: (1) whether the Washington statute violates the *ex post facto* and double jeopardy clauses of the United States Constitution, because the statute's *effect* is punitive;

(2) whether the interpretation and implementation of the statute violates the substantive due process protections of the due process clause of the United States Constitution; (3) whether the statute, on its face and as interpreted by the Washington Supreme Court, violates the equal protection clause of the United States Constitution; and (4) whether Young's confinement is unlawful because (a) he was denied a constitutionally required probable cause hearing, and (b) the commitment trial court committed several trial errors.

## I.

■ The linchpin of this case is whether the Washington statute, as applied to Young, is punitive and thereby subject to the *ex post facto* and double jeopardy clauses of the United States Constitution. The *ex post facto* clause "forbids the application of any new punitive measure to a crime already consummated." *Hendricks,* 521 U.S. at 370, 117 S.Ct. at 2086 (internal quotation marks and citations omitted); U.S. Const., art. 1, § 10. The double jeopardy clause prevents the state from "punishing twice, or attempting a second time to punish criminally, for the same offense." *Id.* at 369, 117 S.Ct. at 2085 (internal quotation marks and citations omitted); U.S. Const., amend. 5. If the Washington statute is punitive, then it (1) imposes a new punitive measure-indefinite confinement-on Young for crimes he committed before the statute's enactment, and (2) punishes Young again, after he has already served his criminal sentences, for the same criminal offenses. Therefore, if Young's confinement pursuant to the Washington statute is punitive, then the statute, as applied to Young, violates the *ex post facto* and double jeopardy clauses of the United States Constitution.

## A.

■ In *Hendricks,* the Supreme Court held that, because involuntary confinement pursuant to Kansas's civil commitment

statute is *not* punitive, that statute's operation does not raise *ex post facto* or double jeopardy concerns. *See Hendricks*, 521 U.S. at 367–92, 117 S.Ct. at 2085–96. Because the Kansas statute was modeled on and is substantially similar to the Washington statute,[3] *Hendricks* forecloses the claim that the Washington statute, on its face, violates the *ex post facto* and double jeopardy clauses.

But *Hendricks* does not preclude the possibility that the Washington statute, *as applied*, is punitive. *See id.* at 361–63, 117 S.Ct. at 2082. In fact, both the majority and concurring opinions in *Hendricks* turn repeatedly to the question whether the conditions of Hendricks's confinement rendered the Kansas statute punitive. *See id.* at 361–63, 367–69, 117 S.Ct. at 2082, 2085 (majority opinion); *see also id.* at 371–73, 117 S.Ct. at 2087 (Kennedy, J., concurring). Heeding Justice Kennedy's reminder that our concern is *not* "how long [Young] and others like him should serve a criminal sentence," but rather "whether it is the criminal system or civil system which should make the decision," *id.* at 373, 117 S.Ct. at 2087 (Kennedy, J., concurring), we must determine whether Young's confinement is criminal rather than civil. And, following the dictates of *Hendricks*, we look to the *conditions* of Young's confinement when we make that determination.[4]

■ Actual conditions of confinement may divest a facially valid statute of its "civil" label only upon a showing by the "clearest proof" that the statutory scheme is punitive in its "effect." *Id.* at 361, 117 S.Ct. at 2082. As discussed below, we conclude that Young has alleged sufficient

facts that, if proved, would constitute such "clear proof."

## B.

■ Young has exhausted his claim that his conditions of confinement at the Special Commitment Center render the Washington statute, as applied to him, punitive. Not only did Young raise the "substance" of his claim to the Washington state courts, *see Picard v. Connor*, 404 U.S. 270, 277–78, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *Chacon v. Wood*, 36 F.3d 1459, 1467 (9th Cir.1994), but he repeatedly attempted to present to the state courts evidence of the conditions of his confinement and the quality of treatment at the Special Commitment Center. The fact that the state courts refused to receive this evidence does not render Young's claim unexhausted.

## C.

■ "An evidentiary hearing on a habeas corpus petition is required whenever a petitioner's allegations, if proved, would entitle him to relief, and no state court trier of fact has, after a full and fair hearing, reliably found the relevant facts." *Turner v. Marshall*, 63 F.3d 807, 815 (9th Cir.1995) (internal quotation marks and citations omitted). In reviewing the district court's failure to hold an evidentiary hearing, this court considers the following questions: (1) did Young allege facts which, if proved, would entitle him to relief, and (2) if so, did a state court reliably find the relevant facts.

■ We hold that Young alleged facts which, if proved, would establish the puni-

---

**3.** For a brief description of the Washington statute, see *Young I*, 898 F.Supp. at 746–48.

**4.** Relying on *Hudson v. United States*, 522 U.S. 93, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997), Washington argues that the conditions of confinement are irrelevant to the court's inquiry. We disagree. Whereas *Hudson* involved monetary penalties and occupational disbarment, *see id.* at ——, 118 S.Ct. at 493, this case involves confinement. In cases con-

sidering the question whether confinement is criminal or civil, the Supreme Court has always looked to the actual conditions of confinement. *See, e.g., Hendricks*, 521 U.S. at 361–69, 117 S.Ct. at 2082–85; *Allen v. Illinois*, 478 U.S. 364, 373–74, 106 S.Ct. 2988, 92 L.Ed.2d 296 (1986); *see also Bell v. Wolfish*, 441 U.S. 520, 535–39, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).

tive nature of his confinement and would entitle him to relief. Young's initial allegations before the district court included the following:

— Young is subject to conditions more restrictive than those placed either on true civil commitment detainees or even those placed on state prisoners;[5]

— Young has been subject to such conditions for more than seven years;[6]

— The Special Commitment Center is located wholly within the perimeter of a larger Department of Corrections facility and relies on the Department of Corrections for a host of essential services, including library services, medical care, food, and security;[7]

— The conditions of confinement at the Special Commitment Center are not compatible with the Washington statute's treatment purposes;[8]

— The conditions and restrictions at the Special Commitment Center are not reasonably related to a legitimate non-punitive goal;[9] and

— The conditions of confinement at the Special Commitment Center do not comport with substantive due process.[10]

In Young's motion to alter the district court's judgment denying his writ of habeas corpus, Young presented further allegations:

— Court-appointed Resident Advocate, psychologist Stanley Greenberg, concluded in his final report, "[b]e-cause the SCC [Special Commitment Center] hasn't fundamentally changed over so many years, even with a court injunction, I have come to suspect that it is designed and managed, either overtly or covertly, to punish and confine these men and women to a life sentence without any hope of release to a less restrictive setting";

— The Department of Corrections staff's role in running the Special Commitment Center had increased: daily Department of Corrections security "walk-throughs"; continued Department of Corrections responsibility for Special Commitment Center residents' medical care (including requirements that residents be shackled and dressed in prison jumpsuit when taken to the Washington State Reformatory infirmary); and continued Department of Corrections responsibility for meals;[11]

— Special Commitment Center residents were housed in units that were, according to Special Master Janice Marques, "clearly inappropriate for individuals in a mental health treatment program";[12] and

— There were still no certified sex-offender treatment providers at Special Commitment Center.[13]

By alleging that Washington's sexually violent predator statute is punitive as applied, Young alleged facts which, if proved, would entitle him to relief. Therefore, we must

5. *Compare Hendricks*, 521 U.S. at 361–63, 117 S.Ct. at 2082; *Allen*, 478 U.S. at 373–74, 106 S.Ct. 2988.

6. *Compare Hendricks*, 521 U.S. at 367–69, 117 S.Ct. at 2085.

7. *Compare id.*

8. *Compare Allen*, 478 U.S. at 373, 106 S.Ct. 2988.

9. *Compare Bell*, 441 U.S. at 539, 99 S.Ct. 1861.

10. *Compare Bell*, 441 U.S. at 535, 536, 99 S.Ct. 1861.

11. *Compare Hendricks*, 521 U.S. at 367–69, 117 S.Ct. at 2085.

12. *Compare Allen*, 478 U.S. at 373, 106 S.Ct. 2988.

13. *Compare Hendricks*, 521 U.S. at 367–69, 117 S.Ct. at 2085.

consider whether a state court reliably found the relevant facts.

■ It is clear to us that the Washington state courts did not afford Young a full and fair hearing concerning the conditions of confinement in the Special Commitment Center. The trial court refused to allow Young to present factual evidence on the actual conditions of confinement and the quality of treatment at trial either in a challenge to the law or before the jury. Nor did Young's factual challenge regarding the conditions of confinement receive a full and fair hearing by the Washington Supreme Court. Indeed, despite its consideration of the question whether the actual impact of the statute was criminal, *see In re Young*, 122 Wash.2d 1, 19, 857 P.2d 989 (1993), the Washington Supreme Court declared in its discussion of Young's substantive due process claims that the issues of the actual conditions of confinement and the quality of treatment were "not before the court." *Id.* at 35, 857 P.2d 989.

"The power of inquiry on federal habeas corpus is plenary." *Rhoden v. Rowland*, 10 F.3d 1457 (9th Cir.1993) (internal quotation marks and citations omitted). Here, where the state trier of fact did not afford Young a full and fair hearing concerning the conditions of confinement in the Special Commitment Center, Young is entitled to an evidentiary hearing in federal district court. *See Chacon*, 36 F.3d at 1465–66; *see also Townsend v. Sain*, 372 U.S. 293, 313, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), *overruled in part by Keeney v. Tamayo–Reyes*, 504 U.S. 1, 5, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992).

## II.

■ Young also argues that the Washington courts' interpretation of the term "mental abnormality" is so vague as to violate his right to substantive due pro-

cess. As the district court correctly concluded, this argument is not supported by the law. *See Hendricks*, 521 U.S. at 360 & n. 3, 117 S.Ct. at 2081 & n. 3; *id.* at 359, 117 S.Ct. at 2080; *Heller v. Doe*, 509 U.S. 312, 314–15, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993); *Allen v. Illinois*, 478 U.S. 364, 366, 106 S.Ct. 2988, 92 L.Ed.2d 296 (1986). Therefore, while the statute's failure to limit its reach to those who completely lack control may be an indicia of a forbidden deterrent purpose, this failure does not, by itself, render the statute unconstitutional.

## III.

■ Young further contends that the Washington statute, on its face and as interpreted by the Washington Supreme Court in *In re Young*, 122 Wash.2d at 41, 857 P.2d 989, violates equal protection. Applying the heightened scrutiny standard, the district court concluded that the classifications that Young challenges are substantially related to the achievement of an important governmental interest. This conclusion was not in error.

## IV.

Young's final claims pertain to alleged errors in his particular commitment procedure.

### A.

■ Young argues that the trial court's failure to hold a constitutionally required probable cause hearing warrants reversal. Because Young offers no support for his argument that this omission had any bearing on the ultimate outcome of his trial, this omission does not entitle Young to relief.[14] *Cf. Powell v. Nevada*, 511 U.S. 79, 84, 114 S.Ct. 1280, 128 L.Ed.2d 1 (1994); *Gerstein v. Pugh*, 420 U.S. 103, 119, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975).

To be sure, Washington's refusal to allow Young to appear before any court for

---

**14.** To the extent that Young's claim of prejudice relies on his argument that he was deprived of the opportunity to present less-restrictive alternatives to confinement based on his situation at the time of his initial confine-

ment, this issue is not before the court. The Washington state courts have yet to render a final judgment on the issue of less-restrictive alternatives to Young's confinement.

four months-where those facing commitment under Washington's regular civil commitment statute are entitled to a *prompt* probable cause hearing-may be an indicia of the statute's punitive purpose or effect. Nevertheless, the omission of such a hearing in this case does not, by itself, require reversal.

### B.

Finally, Young argues that the district court erred in finding that several alleged trial errors did not require reversal. We disagree and affirm the district court's rulings with regard to these alleged errors.

### CONCLUSION

Because the district court did not conduct an evidentiary hearing on the question whether the conditions of Young's confinement at the Special Commitment Center rendered the statute punitive as applied to Young, we reverse and remand for further proceedings on the *ex post facto* and double jeopardy clause claims. We affirm the district court on all other grounds.

REVERSED and REMANDED in part. AFFIRMED in part.