36 P.3d 1053 (2000)
104 Wash.App. 283
In re the Detention of: Ronald Lane PETERSEN, Appellant.
v.
STATE of Washington, Respondent.
No. 43292-3-I.
Court of Appeals of Washington, Division 1.
September 11, 2000.
Publication Ordered December 26, 2000.
*1054 Suzanne L. Elliott, for appellant.
Norm Maleng, Prosecuting Attorney, and David J.W. Hackett, Deputy, for respondent.
COX, J.
Ronald Petersen appeals from an order committing him as a sexually violent predator to the Special Commitment Center (SCC). He challenges, on constitutional grounds, several provisions of RCW 71.09. He also challenges various evidentiary and other rulings by the trial court during the commitment trial and claims prosecutorial misconduct deprived him of a fair trial. The constitutional arguments are not well-taken. There was no reversible error in any of the trial court's rulings and no prosecutorial misconduct. We affirm.
In 1993, the State commenced an action to commit Ronald Petersen, under RCW 71.09, as a sexually violent predator. The trial court denied Petersen's motion to dismiss the commitment proceeding based, among other things, on the alleged unconstitutional conditions of confinement at the Special Commitment Center (SCC) in Monroe. A jury found him to be a sexually violent predator and also found that there was no less restrictive alternative to total confinement. The trial court then committed him to the SCC for treatment.
In 1996, the trial court conducted an annual review of Petersen's case under RCW 71.09.090.[1] Petersen moved for release based on the alleged unconstitutional release provisions of RCW 71.09.090. The trial court denied the motion and continued Petersen's commitment.
Petersen appeals.

Ex Post Facto
Petersen argues that his commitment under RCW 71.09 is punitive as applied to him and thus violates the state and federal constitutional prohibitions against ex post facto punishment. We disagree.
*1055 The federal and state constitutions prohibit the enactment of ex post facto laws.[2] A statute violates constitutional ex post facto prohibitions when it "imposes punishment for an act which was not punishable when committed, or which increases the quantum of punishment for the offense after the crime was committed."[3] The ex post facto clause applies only to criminal matters.[4] Thus, if a statute is civil rather than criminal in nature, the statute survives an ex post facto challenge.[5]
Our Supreme Court has adopted a two-part test to determine whether a statute is criminal or civil. The first step is to look to the language and legislative history of the statute to determine whether the legislature intended the statute to be civil or criminal.[6] If the legislature intended for the statute to be civil, the second step is to analyze whether the statutory scheme is so punitive either in purpose or effect as to negate that intention.[7]
In In re Young, our Supreme Court applied the above two-part test and held that RCW 71.09 is civil in nature and does not violate the ex post facto clause.[8] Recognizing Young's holding, Petersen nevertheless argues that RCW 71.09 is punitive as applied to him and therefore violates the ex post facto clause. To support his argument, Petersen claims that (1) the prosecutor in this case evinced a "punitive purpose" by focusing the commitment proceeding on Petersen's criminal history, (2) he was housed in penal facilities during commitment proceedings, and (3) the conditions of confinement at the SCC are inadequate. We hold that Petersen cannot make an "as applied" ex post facto challenge to RCW 71.09 on these bases.
In In re Detention of Campbell,[9] our Supreme Court rejected an almost identical "as applied" challenge to RCW 71.09. The detainee in Campbell argued that inadequate conditions of care at the SCC rendered RCW 71.09 punitive as applied to him, thereby violating ex post facto.[10] In rejecting that claim, the Campbell court held that an ex post facto challenge to RCW 71.09 must be made facially rather than by assessing the character of the actual sanctions imposed.[11] The court then concluded that the allegedly unconstitutional administration of a statute does not make the statute itself unconstitutional, and upheld the validity of Campbell's commitment under RCW 71.09.[12] In light of Campbell's holding, we reject Petersen's argument that RCW 71.09 violates the ex post facto clause because of the manner in which it is administered.
Petersen's reliance on Young v. Weston[13] to support his arguments is misplaced. On remand from the Ninth Circuit, the district court judge reversed his prior ruling on which Petersen relies.[14]

*1056 Equal Protection
Petersen argues that the differences in the annual review and release procedures between RCW 71.09 and RCW 71.05, which governs commitment of the mentally ill, violate the equal protection clauses of the state and federal constitutions. Specifically, he claims that the annual review and release procedures for sexually violent predators are more stringent than those for other mentally ill persons. Because there is a rational basis for treating sexually violent predators differently from other mentally ill persons with respect to release procedures, we disagree.
We need not separately analyze Petersen's equal protection challenge under the state and federal constitutions.[15] The first step in an equal protection analysis is to determine the standard under which the legislative classification is properly analyzed. When addressing the constitutionality of civil commitment statutes creating differing classes of persons, we apply the deferential rational basis standard.[16] Under this standard, a legislative classification will be upheld unless it rests on grounds wholly irrelevant to the achievement of legitimate state objectives.[17] A classification may be valid based on rational speculation unsupported by evidence or empirical data.[18] The burden is on the party challenging the classification to show that the classification is purely arbitrary.[19]
Under RCW 71.09.070, a sexually violent predator generally receives an annual review of his or her mental condition to determine suitability for release while individuals committed with mental disorders under RCW 71.05 receive review hearings every 180 days.[20] Under RCW 71.09.090, a sexually violent predator petitioning for conditional release or unconditional discharge must first go through a show cause hearing. At the show cause hearing, the court only considers whether there is probable cause to believe that the individual's condition has so changed that he or she is not likely to commit predatory acts of sexual violence.[21] If the court finds probable cause, it then holds a full evidentiary hearing where the mental status of the individual is addressed on the merits. In contrast, the mental illness commitment statute does not require a show cause hearing to determine whether the committed individual may be released.[22]
*1057 Petersen argues that the differences in the timing of the annual reviews and in the release procedures violate his right to equal protection. But the Turay court has rejected the argument that the longer time period between reviews for individuals committed under RCW 71.09 violates the equal protection guarantee.[23] Thus, we reject this aspect of Petersen's claim. To the extent that he argues that the differences in release procedures between the two statutes violate equal protection, we also reject that contention.
There is a rational basis for treating sexually violent predators and other mentally ill persons differently with respect to release procedures. As the Young court noted, differences in dangerousness, treatment methods, and prognosis for the mentally ill and violent sex offenders justify treating the two groups differently.[24]
Because sexually violent predators are more dangerous than mentally ill individuals committed under RCW 71.05,[25] it is rational to impose a show cause hearing and a full evidentiary hearing prior to their release.[26] The show cause hearing is a summary proceeding where the trial court makes a threshold determination whether there is evidence amounting to probable cause to hold a full hearing.[27] It is rational for the Legislature to provide that courts not be burdened annually with full evidentiary hearings absent probable cause to believe that such a hearing is necessary. Therefore, allowing those committed under RCW 71.05 to be released solely on the recommendation of the superintendent but requiring a show cause and a full evidentiary hearing before sexually violent predators are released does not violate equal protection.
We affirm.
The remainder of this opinion has no precedential value and will be filed for public record in accordance with the rules governing unpublished opinions.[28]
AGID, C.J., and KENNEDY, J., concur.
NOTES
[1] RCW 71.09.090 sets forth the procedures for the committed individual to annually petition for either conditional release to a less restrictive alternative or unconditional discharge.
[2] U.S. Const. art. I, § 10, cl. 1; Const. art. I, § 23.
[3] State v. Hennings, 129 Wash.2d 512, 525, 919 P.2d 580 (1996).
[4] In re Personal Restraint of Young, 122 Wash.2d 1, 24, 857 P.2d 989 (1993) (citations omitted).
[5] In re Young, 122 Wash.2d at 18, 857 P.2d 989.
[6] In re Young, 122 Wash.2d at 18, 857 P.2d 989; In re Detention of Turay, 139 Wash.2d 379, 416-17, 986 P.2d 790 (1999) (quoting Hudson v. U.S. 522 U.S. 93, 118 S.Ct. 488, 493, 139 L.Ed.2d 450 (1997)); see also, Kansas v. Hendricks, 521 U.S. 346, 361, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997).
[7] In re Young, 122 Wash.2d at 18, 857 P.2d 989; In re Turay, 139 Wash.2d at 416-17, 986 P.2d 790.
[8] In re Young, 122 Wash.2d at 23-24, 857 P.2d 989.
[9] 139 Wash.2d 341, 986 P.2d 771 (1999).
[10] In re Campbell, 139 Wash.2d at 346, 986 P.2d 771.
[11] In re Campbell, 139 Wash.2d at 348, 986 P.2d 771.
[12] In re Campbell, 139 Wash.2d at 348, 986 P.2d 771.
[13] 898 F.Supp. 744 (W.D.Wash.1995) (holding that RCW 71.09, on its face, violated the ex post facto clause because it is punitive and applies retrospectively as well as double jeopardy because it imposes additional incarceration on a person who has already been punished for the commission of a criminal offense).
[14] Young v. Weston, No. C94-480C (February 10, 1998). Young subsequently appealed the district court's order denying his habeas petition and the Ninth Circuit reversed in part on grounds that Kansas v. Hendricks, 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501, does not preclude the possibility that RCW 71.09, as applied, is punitive. As such, the Ninth Circuit remanded for a hearing on whether the conditions of Young's confinement at SCC rendered RCW 71.09 punitive as applied to him. Young v. Weston, 176 F.3d 1196, 1202 (9th Cir.1999), cert. granted sub nom., Seling v. Young, 529 U.S. 1017, 120 S.Ct. 1416, 146 L.Ed.2d 309 (2000). But our Supreme Court explicitly declined to follow Young. See In re Turay, 139 Wash.2d at 421, 986 P.2d 790.
[15] In re Turay, 139 Wash.2d at 412, 986 P.2d 790 (declining to determine whether annual review provisions of RCW 71.09.090 violate equal protection clause of the state constitution after holding that the annual review provisions do not violate the equal protection clause of the U.S. constitution because the two clauses have the same impact) (citations omitted).
[16] In re Turay, 139 Wash.2d at 410, 986 P.2d 790 (quoting In re Detention of Dydasco, 135 Wash.2d 943, 951, 959 P.2d 1111 (1998)); In re Detention of Patterson, 90 Wash.2d 144, 149-50, 579 P.2d 1335 (1978), overruled in part on other grounds by Dunner v. McLaughlin, 100 Wash.2d 832, 676 P.2d 444 (1984).
[17] In re Turay, 139 Wash.2d at 410, 986 P.2d 790 (citing State v. Thorne, 129 Wash.2d 736, 771, 921 P.2d 514 (1996)); see also, In re Personal Restraint of Stanphill, 134 Wash.2d 165, 175, 949 P.2d 365 (1998).
[18] Heller v. Doe, 509 U.S. 312, 320, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993).
[19] In re Turay, 139 Wash.2d at 410, 986 P.2d 790.
[20] RCW 71.09.070 states that "[e]ach person committed under this chapter shall have a current examination of his or her mental condition made at least once every year." RCW 71.05.320(2)(d) states that "[a]t the end of the one hundred eighty day period of commitment, the committed person shall be released unless a petition for another one hundred eighty day period of continued treatment is filed and heard ..."
[21] RCW 71.09.090(2); In re Detention of Petersen, 138 Wash.2d 70, 85, 980 P.2d 1204 (1999).
[22] RCW 71.05.330(1) & (2) state in relevant part:

Nothing in [RCW 71.05] shall prohibit the superintendent... in charge of the hospital ... in which the person is being involuntarily treated from releasing him or her prior to the expiration of the commitment period when, in the opinion of the superintendent ..., the person being involuntarily treated no longer presents a likelihood of serious harm.
Before a person committed [after being acquitted of a felony on grounds of insanity and who presents a substantial likelihood of repeating a felony] is released, ... the prosecuting attorney may petition the court ... for a hearing to determine whether the person is to be released... The issue to be determined at the hearing is whether or not the person may be released without substantial danger to other persons, or substantial likelihood of committing criminal acts jeopardizing public safety or security.
[23] In re Turay, 139 Wash.2d at 411-12, 986 P.2d 790.
[24] In re Young, 122 Wash.2d at 44-45, 857 P.2d 989; see also RCW 71.09.010, where the Legislature specifically found that:

[T]he prognosis for curing sexually violent offenders is poor, the treatment needs of this population are very long term, and the treatment modalities for this population are very different than the traditional treatment modalities for people appropriate for commitment under the involuntary treatment act.
[25] See RCW 79.09.010; In re Young, 122 Wash.2d at 45, 857 P.2d 989.
[26] See Powell v. State of Florida, 579 F.2d 324, 333 (1978) (Florida's system of allowing involuntarily hospitalized persons to be released solely on the recommendation of the hospital administrator but requiring court approval before those committed after an insanity acquittal is rationally based on insanity acquittee's greater dangerousness); see also, Williams v. Wallis, 734 F.2d 1434, 1437 (1984).
[27] In re Petersen, 138 Wash.2d at 90, 980 P.2d 1204.
[28] RCW 2.06.040.