[Nos. 68116-3; 68201-1;    En Banc.]
68501-1.
Argued June 15, 2000.    Decided December 27, 2001.

*In the Matter of the Detention of* SCOTT W. BROOKS,
*Petitioner.*
*In the Matter of the Detention of* RUDOLPH FRANKLIN,
*Appellant.*

---

SANDERS, J., dissents in part by separate opinion; IRELAND and MADSEN, JJ., dissent by separate opinion; CHAMBERS and OWENS, JJ., did not participate in the disposition of this case.

*Douglass C. McCrae, Christine A. Jackson, Dennis P. Carroll, Leslie J. Garrison, David B. Hirsch, and Shawn R. Crowley* (of *The Defender Association*), for petitioner Brooks and appellant Franklin.

*Norm Maleng, Prosecuting Attorney for King County*, and *David J.W. Hackett, Michele A. Hauptman*, and *Dana Cashman, Deputies*, for the State.

GUY, J.[*] — In these consolidated cases Scott W. Brooks and Rudolph Franklin ask this court to determine whether either chapter 71.09 RCW (known as the sexually violent predator statute), as amended in 1995 and in 2001, or this court's decision in *In re Personal Restraint of Young*, 122 Wn.2d 1, 857 P.2d 989 (1993), requires at the probable cause hearing and commitment trial consideration of less restrictive alternatives to total confinement. Brooks alone argues that chapter 71.09 RCW is unconstitutional because

---

[*] Justice Richard P. Guy is serving as a justice pro tempore of the Supreme Court pursuant to Const. art. IV, § 2(a).

it allows the commitment of a person upon a showing short of what he claims is the constitutionally required minimum of clear and convincing evidence. Additionally, Brooks asks that the judgment against him be vacated because the State's sole witness as to Brooks' mental disorder and likelihood of reoffending may have committed perjury when he falsified some of his medical qualifications.

The equal protection clauses of the federal and state constitutions require that less restrictive alternatives (LRAs) to confinement be considered at the commitment trials of those committed under chapter 71.09 RCW, the sexually violent predator (SVP) statute, just as LRAs are considered at the trials of persons committed under chapter 71.05 RCW, the mental illness statute. We do not find a rational relationship between the timing of the consideration of LRAs under the current SVP statute—only after the commitment trial—and greater public safety. On this issue, the SVP statute fails rational basis scrutiny.

Because LRAs were not considered at Brooks' commitment trial, we vacate the order committing him as an SVP and remand his case for a new commitment trial under RCW 71.09.050 and 71.09.060. We reverse in part and affirm in part the Court of Appeals decision in *In re Detention of Brooks*, 94 Wn. App. 716, 973 P.2d 486 (1999); we reverse on equal protection grounds the Court of Appeals affirmation of the order committing Brooks, and we affirm on other grounds the court's rejection of Brooks' claims that the SVP statute violates due process and equal protection because it allows for commitment on a showing below what is constitutionally required. We reverse the trial court's order committing Franklin and remand his case for a commitment trial under chapter 71.09 RCW. Having decided the cases on constitutional grounds, we do not reach the issue of whether the order committing Brooks should be vacated because the State's expert witness misrepresented his qualifications.

## FACTS

Brooks was convicted on four separate occasions of having committed sexually violent crimes, including indecent liberties and second degree rape. State's Answer to Brooks' Pet. for Review at 1. In 1987 he was convicted of indecent liberties and communication with a minor for immoral purposes. Brooks' Pet. for Review at 2. Just before Brooks was about to complete his sentence for this crime, the State petitioned for Brooks' involuntary commitment under chapter 71.09 RCW. Brooks moved to dismiss the petition because chapter 71.09 RCW, as amended in 1995, eliminated consideration of LRAs, thus violating due process and equal protection. *Id.* He also argued that the statute would permit the State to commit him if he were found "more likely than not" to commit an act of sexual violence instead of "highly likely" as constitutionally required. *Id.* at 3. At his trial, Brooks asked the court to instruct the jury that the State must establish that he could not be safely treated in an LRA to total confinement, but the court refused. *Id.* On April 7, 1997, the jury found Brooks to be an SVP, and two days later the trial court entered a judgment and order committing Brooks. *Id.* On appeal, Division One found no constitutional infirmity in the amended statute and found the evidence sufficient to support the determination that Brooks was an SVP. *In re Det. of Brooks*, 94 Wn. App. at 719. Accordingly, the Court of Appeals affirmed the commitment order. *Id.* This court granted review on September 29, 1999.

At Brooks' commitment trial, the State's sole witness offering an opinion on two of the elements required by the statute—mental abnormality or personality disorder, and likelihood of reoffense—was Dr. Barry Maletzky. Brooks' Mot. for Discretionary Review, App. C at 1. In a subsequent superior court trial Dr. Maletzky testified that items on his resume were inaccurate. Brooks' Mot. for Discretionary Review at 4. For example, he had been claiming that his medical degree was from Columbia when in fact it was awarded by the State University of New York. *Id.* The State

withdrew Maletzky from that case and had his testimony stricken. *Id*. Brooks then filed a motion under CR 60(b) to vacate the judgment. *Id*. at 4-5. The trial court denied the motion and reasoned that while Maletzky's misrepresentations constituted perjury, they fell under the category of impeachment evidence. *Id*. at 5. Brooks filed a motion for discretionary review with this court, and review was granted on September 29, 1999. This claim was consolidated with Brooks' other claim arising out of his appeal of the Court of Appeals decision.

Franklin was incarcerated for his 1988 convictions for first and second degree rape and first degree theft. State's Br. in Franklin at 5. On October 1, 1999, the State filed a petition alleging Franklin to be an SVP. Franklin's Opening Br. at 4. At his commitment trial Franklin asked for clarification regarding the role of LRAs. *Id*. The trial court found that the State did not need to prove that Franklin would be likely to commit future acts of predatory sexual violence if placed in an LRA. *Id*. at 5-6. Franklin stipulated to meeting the criteria of an SVP as interpreted by the trial court. *Id*. at 6. As part of the stipulation, Franklin preserved his right to appeal the court's order on this point. *Id*. Franklin's case was retained by this court on February 9, 2000 and consolidated with Brooks' case.

## ISSUES

(1) Does the definition of "sexually violent predator" in former RCW 71.09.020(1) (1995) require a consideration of LRAs to confinement in a secure facility?

(2) Is it a violation of the equal protection clauses of the federal and state constitutions for LRAs to confinement under chapter 71.09 RCW to be considered only after a person petitions for release from confinement whereas under chapter 71.05 RCW LRAs to confinement are considered at the probable cause hearing and commitment trial?

(3) Is chapter 71.09 RCW unconstitutional because it allows for the commitment of a person upon a showing less

than the constitutionally required minimum of clear and convincing evidence?

(4) Should the judgment committing Brooks be vacated because the State's main witness falsified his qualifications?

## DISCUSSION

### I

Franklin argues that the plain meaning of the 1995 amendment to former RCW 71.09.020(1), which added the phrase "if not confined in a secure facility," requires the State to prove a defendant is likely to reoffend under conditions short of confinement in a secure facility, and that "conditions" include LRAs to confinement. Franklin's Reply Br. at 1. Franklin asserts that this court's decision in *In re Detention of Campbell*, 139 Wn.2d 341, 352, 986 P.2d 771 (1999), interprets the amendment to former RCW 71-.09.020(1) to exclude from commitment those individuals who could be managed in the community under an LRA. *Id.* at 2. LAWS OF 1995, ch. 216, § 1(7) defines an LRA as "court-ordered treatment in a setting less restrictive than total confinement." The State does not dispute that this court has interpreted the statute in that way; the State does counter that this court's discussion of the 1995 amendments is dicta and thus has no precedential or persuasive value. State's Br. in Franklin at 22. The State argues that "if not confined in a secure facility" refers only to voluntary, community-based treatment options and not court-imposed conditions which cannot be effected under the current statute. State's Br. in Franklin at 12.

In *Young*, this court held that the basic scheme of the SVP statute in effect in 1993 was constitutional. *Young*, 122 Wn.2d at 59. However, it agreed with the petitioners that the statute violated equal protection because it did not require consideration of LRAs to confinement as did the mental health statute, chapter 71.05 RCW. *Id.* This court

held that equal protection requires the state to comply with provisions of chapter 71.05 RCW as related to the consideration of LRAs. Young's case was remanded for consideration of alternatives to confinement. *Id.*

In response to *Young*, the Legislature amended the SVP statute in 1995. In addition to addressing other concerns raised by *Young*, amendments to RCW 71.09.090 allowed the confined person to be released to an LRA or discharged if he or she has so changed that the person is no longer likely to engage in predatory acts of sexual violence. Such a release or discharge occurs only after a hearing. RCW 71.09.090. The hearings provided for in RCW 71.09.090 take place *after* the probable cause hearing and the commitment trial determining whether the person is an SVP.

The 1995 amendments to the SVP statute also added the following language to the definition of "sexually violent predator" in former RCW 71.09.020(1):

> "Sexually violent predator" means any person who has been convicted of or charged with a crime of sexual violence and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in predatory acts of sexual violence *if not confined in a secure facility*.

LAWS OF 1995, ch. 216, § 1 (added language emphasized). The Court of Appeals in *In re Detention of Ross*, 102 Wn. App. 108, 114-15, 6 P.3d 625 (2000), construed the added phrase to exclude from the category of "sexually violent predator" a person who can show he is unlikely to engage in predatory acts if treated in the community through the alternative treatment plan of an LRA. Because the trial court did not allow Ross to present evidence that with court-ordered monitoring of his treatment in an LRA, he could be effectively treated in the community, the Court of Appeals reversed and remanded for a new commitment trial. *Id.* at 110-11, 117, 120.

In a direct response to *Ross*, the Legislature amended chapter 71.09 RCW. *See* LAWS OF 2001, ch. 286, § 1. The Legislature stated that it always intended that under this

chapter the jury be presented only with conditions that the court has the authority to order and that the court has no authority to order the defendant to undergo treatment in an LRA. *Id.* The Legislature clarified the SVP statute on this point by, among other things, adding language by defining the phrase "Likely to engage in predatory acts of sexual violence <u>if not confined in a secure facility</u>" to mean "that the person more probably than not will engage in such acts <u>if released unconditionally from detention on the sexually violent predator petition</u>." *Id.* § 4 (added language underlined). The finder of fact may consider only those placement conditions and voluntary treatment options that would exist for a person unconditionally released. *Id.* § 7. Therefore, the present SVP statute[1] does not allow evidence that the defendant is amenable to treatment in an LRA to be presented to the finder of fact and does not allow for consideration of LRAs at the probable cause hearing or commitment trial.

The Legislature also stated that the 2001 amendments to the SVP statute apply "to all individuals currently committed or awaiting commitment under chapter 71.09 RCW either on, before, or after the effective date of this act, whether confined in a secure facility or on conditional release." *Id.* § 14.

Citing *State v. Dunaway*, 109 Wn.2d 207, 216 n.6, 743 P.2d 1237 (1987), Franklin argues that amendments to a statute that clarify the statute may be applied prospectively only where the judiciary has already construed the statute in a different manner. Franklin's Suppl. Br. at 10. The State counters that the Legislature intended the amendments to act retrospectively and retroactively. State Suppl. Br. at 6.

■ "As a general rule, an amendment is like any other statute and applies prospectively only." *In re F.D. Processing, Inc.*, 119 Wn.2d 452, 460, 832 P.2d 1303 (1992). "Nevertheless, an amendment may be retroactively applied if the Legislature so intended or if the amendment is

---

[1] The amendments took effect on May 14, 2001. LAWS OF 2001, ch. 286, § 15.

'clearly curative.' " *Id.* (quoting *Howell v. Spokane & Inland Empire Blood Bank*, 114 Wn.2d 42, 47, 785 P.2d 815 (1990)). "[A]n amendment will be applied retroactively if, '(1) the legislature so intended; (2) it is "curative"; or (3) it is remedial, provided, however, such retroactive application does not run afoul of any constitutional prohibition.' " *McGee Guest Home, Inc. v. Dep't of Soc. & Health Servs.*, 142 Wn.2d 316, 324, 12 P.3d 144 (2000) (quoting *State v. Cruz*, 139 Wn.2d 186, 191, 985 P.2d 384 (1999)). "[E]ven a clarifying enactment cannot be applied retrospectively when it contravenes a construction placed on the original statute by the judiciary." *Dunaway*, 109 Wn.2d at 216 n.6. " 'Any other result would make the legislature a court of last resort.' " *Id.* (quoting 1A C. DALLAS SANDS, STATUTES AND STATUTORY CONSTRUCTION § 27.04 (Norman J. Singer ed., 4th rev. ed. 1985)). "Any attempt by the Legislature to contravene retroactively this Court's construction of a statute 'is disturbing in that it would effectively be giving license to the [L]egislature to overrule this [C]ourt, raising separation of powers problems.' " *Magula v. Benton Franklin Title Co.*, 131 Wn.2d 171, 182, 930 P.2d 307 (1997) (quoting *Johnson v. Morris*, 87 Wn.2d 922, 926, 557 P.2d 1299 (1976)).

In those cases following the rule in *Dunaway*, which does not allow for retrospective application of a clarifying amendment contravening a judicial construction of the original statute, the Legislature did not expressly apply the amendments retroactively. *See Dunaway*, 109 Wn.2d at 216; *State v. Jones*, 110 Wn.2d 74, 82, 750 P.2d 620 (1988).

Here the 2001 amendments to the SVP statute expressly provide for retroactive application: "This act applies to all individuals currently committed or awaiting commitment under chapter 71.09 RCW either on, before, or after the effective date of this act." LAWS OF 2001, ch. 286, § 14. Therefore, because the Legislature intends the amendments to apply retroactively, they may be so applied.

We do not decide the issue of whether amendments to a statute may be applied retroactively where the Legislature expressly intends them to apply retrospectively and where

the amendments contravene a judicial construction of the original statute. In order to decide that issue we would first have to determine whether amendments may be retroactively applied if they contravene a construction placed upon the original statute by *this court*. If we were to determine that the amendments could not be retroactively applied, we could then decide whether construction of a statute by an appellate court would have the same effect as construction by this court. However, we do not have before us amendments that contravene a construction placed upon the original statute by this court. We accept the State's argument that the language from *Campbell* suggesting that the 1995 amendments made consideration of LRAs mandatory at the probable cause hearing is dicta; we decided the issue based on the 1990 statute and not on the 1995 amendments. *Campbell*, 139 Wn.2d at 352. Therefore, only the construction placed upon the 1995 amendments by the Court of Appeals in *Ross* is at issue, and we decline to decide whether amendments that contravene a Court of Appeals' construction of a statute may be retroactively applied.

## II

We next consider whether it is a violation of the equal protection clauses of the federal and state constitutions for LRAs to confinement under chapter 71.09 RCW to be considered only after a person petitions for release from confinement whereas under chapter 71.05 RCW LRAs to confinement are considered at the probable cause hearing and commitment trial. Both Brooks and Franklin assert that *In re Personal Restraint of Young*, 122 Wn.2d 1, requires courts to consider LRAs at the commitment trial or as part of the initial commitment process. Franklin's Reply Br. at 17; Brooks' Pet. for Review at 5.

Considering the 1990 SVP statute, this court in *Young* held that equal protection required the State to comply with the mental illness statute, chapter 71.05 RCW, as it related to the consideration of LRAs. *Young*, 122 Wn.2d at 47. In

1995 the Legislature amended the SVP statute by, among other things, allowing for consideration of LRAs only when the person confined as an SVP petitions for release in accordance with procedures set forth in RCW 71.09.090-71.09.098. *See* LAWS OF 1995, ch. 216. Because the SVP statute provides for an *annual* report of the SVP's condition to be the basis for granting release, the petitioning SVP had no basis on which to demonstrate fitness for release until such a report was provided to the court one full year after the SVP is committed.[2] *See* RCW 71.09.070; Br. of Resp't (State) in Franklin at 28 n.6. On the other hand, under chapter 71.05 RCW the court must consider LRAs at the person's probable cause hearing and may order him to undergo treatment in an LRA. RCW 71.05.240. At his commitment trial the court or jury may find that treatment in an LRA will be in the best interest of the person and, if so, the court shall remand him for treatment in an LRA. RCW 71.05.320. The 2001 amendments to the SVP statute confirmed that LRAs may not be considered at the commitment trial:

> In determining whether or not the person would be likely to engage in predatory acts of sexual violence if not confined in a secure facility, the fact finder may consider only placement conditions and voluntary treatment options that would exist for the person if unconditionally released from detention on the sexually violent predator petition.

LAWS OF 2001, ch. 286, § 7(1). Furthermore, "[a] court has jurisdiction to order a less restrictive alternative placement only after a hearing ordered pursuant to RCW 71.09.090 following initial commitment under this section and in accord with the provisions of this chapter." *Id.* § 7(4).

Construing the SVP statute as amended in 1995, the Court of Appeals in *Brooks* held that treating SVPs differently from persons committed under chapter 71.05 RCW

---

[2] The State claims that the SVP may file a petition for release immediately following the SVP determination. Br. of Resp't (State) in Franklin at 28 n.7. However, RCW 71.09.090(1)(a) and (b), as amended in 2001, which outlines the procedure for the immediate filing of the petition for release, depend upon the existence of the annual report. LAWS OF 2001, ch. 286, § 9.

with respect to the *time* at which LRAs may be considered did not deprive SVPs of the equal protection of the laws. *Brooks*, 94 Wn. App. at 723. The *Brooks* court used the rational basis test to analyze Brooks' equal protection claim. *Id.* at 720-21.

■■ "The equal protection clause requires that persons similarly situated with respect to the legitimate purposes of the laws receive like treatment." *In re Pers. Restraint of Knapp*, 102 Wn.2d 466, 473, 687 P.2d 1145 (1984). "Equal protection does not require that all persons be dealt with identically, but it does require that a distinction made have some relevance to the purpose for which the classification is made." *Baxstrom v. Herold*, 383 U.S. 107, 111, 86 S. Ct. 760, 15 L. Ed. 2d 620 (1966). "When addressing the constitutionality of civil commitment statutes creating differing classes of persons, we apply rational basis scrutiny." *In re Det. of Dydasco*, 135 Wn.2d 943, 951, 959 P.2d 1111 (1998). Under rational basis review, a classification "cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Heller v. Doe*, 509 U.S. 312, 320, 113 S. Ct. 2637, 125 L. Ed. 2d 257 (1993). "Under the rational relationship test, the classification will be upheld unless it rests on grounds wholly irrelevant to achievement of legitimate state objectives." *In re Pers. Restraint of Stanphill*, 134 Wn.2d 165, 175, 949 P.2d 365 (1998). The classification must be purely arbitrary in order to overcome the strong presumption of constitutionality. *State v. Smith*, 117 Wn.2d 263, 279, 814 P.2d 652 (1991).

■ The State initially argues that SVPs and persons committed under chapter 71.05 RCW are not similarly situated. State's Resp. Br. in Brooks at 17-18. We find no reason to depart from our position in *Young* that persons confined under chapter 71.05 RCW and chapter 71.09 RCW are similarly situated with respect to the legitimate purposes of the laws. *See Young*, 122 Wn.2d at 47. Our reasoning on this point has been implicitly accepted by the Ninth Circuit. *See Young v. Weston*, 192 F.3d 870, 876 (9th

Cir. 1999) (holding that the district court was not in error in concluding that the State's classifications are substantially related to the achievement of an important governmental interest). We address below any important changes with respect to an equal protection analysis of the 1990 SVP statute discussed by the *Young* court and the SVP statute as amended in 2001 at issue here.

We apply the rational basis test to the equal protection challenge in this case without deciding whether "heightened scrutiny" or the rational basis standard is the proper one to analyze civil commitment statutes creating differing classes of persons. The Ninth Circuit approved the use of the heightened scrutiny standard to review the equal protection challenge brought by petitioner Young. *See Weston*, 192 F.3d at 876. *See also United States v. Sahhar*, 917 F.2d 1197, 1200-01 (9th Cir. 1990) (deciding not to resolve issue of whether rational basis or heightened scrutiny standard should apply in a case involving two classifications of dangerous and mentally ill persons, those who have been charged with federal crimes and those who have not, because result would be same under either standard). As did the court in *Sahhar*, we do not decide which standard to use because the result would be the same under either.

Under rational basis review we first inquire whether there is a legitimate government purpose in classifying SVPs separately from those committed under chapter 71.05 RCW. In *Young* this court stated that the State has a compelling interest in treating SVPs and protecting society from their actions. *Young*, 122 Wn.2d at 26. We agreed with the State that there are good reasons for treating SVPs differently from mentally ill people because SVPs are generally more dangerous to others than are the mentally ill. *Id.* at 44-45. Because the State has a legitimate purpose for its classification, our inquiry focuses on whether treating SVPs differently from those committed under chapter 71.05 RCW with respect to the *time* at which LRAs may be considered is rationally related to the governmental objective of protecting society. *See Brooks*, 94 Wn. App. at 723.

The State argues that the dangerousness of SVPs and the difficulty of understanding what is called the SVP's "offense cycle" justify delaying consideration of LRAs until after commitment. Br. of Resp't (State) in Franklin at 27. Psychologists need to observe the SVP in a controlled treatment environment for a period of time before being able to recommend an LRA. *Id.* In support of this view is a declaration by Mark Seling, Superintendent of the Special Commitment Center:

> [I]n order to design an effective less restrictive alternative treatment plan for an individual who has the requisite mental condition and risk that define a sexually violent predator, the individual must spend *a period of time* in intensive inpatient treatment. This period is necessary to provide both the therapist and the patient with an in depth understanding of the individual's offense cycle, as well as attaining other treatment goals. Understanding the offense cycle is necessary for the formulation of any relapse prevention plan which is an essential component of any less restrictive alternative.

State's Resp. Br. in Brooks, App. C at 5 (emphasis added); *Brooks*, 94 Wn. App. at 723-24.

Franklin has two responses. First, he argues that RCW 71.09.040 and .050 allow for a period of 45 days between the probable cause hearing and the commitment trial, during which time a qualified professional shall examine the person in order to evaluate whether the person is an SVP. Franklin's Reply Br. at 20. Franklin asserts that the State does not explain why a 45-day period is insufficient time for professionals to determine whether an LRA is appropriate. *Id.* Second, Franklin claims that he was evaluated and observed for over one year while he was in the Sex Offender Treatment Program during his term in prison. *Id.* He and others like him should not be denied consideration for treatment in LRAs because not all those committed under chapter 71.09 RCW have been so evaluated. *Id.* at 20-21.

We are more persuaded by Franklin's first argument. Of the five classes of persons alleged to be SVPs, four are

already confined when the State files its petition making the allegations. RCW 71.09.030(1)-(5). If a judge makes an initial determination that probable cause exists that a person is an SVP, persons not already incarcerated shall be taken into custody. RCW 71.09.040(1). Therefore, the timing of a consideration of an LRA—whether before or after the commitment trial—has no effect on public safety because the alleged SVP remains confined in either case. *See* RCW 71.09.040(4) ("In no event shall the person be released from confinement prior to trial.").

The only remaining question is whether consideration of LRAs before the commitment trial adversely affects public safety by releasing SVP's from confinement before a sufficient period of time necessary for a proper evaluation has passed. Under the present statute the SVP is considered for release based upon the evaluation of his condition contained in an annual report. LAWS OF 2001, ch. 286, §§ 8, 9 (RCW 71.09.070, .090). The State construes this to mean that the first annual review is conducted one year after the SVP's commitment. Br. of Resp't (State) in Franklin at 28 n.6. Nevertheless, RCW 71.09.090(1)(b) allows the committed person to petition on his own for release. LAWS OF 2001, ch. 286, § 9. According to the State, the committed person does not have to wait for the annual review, but may instead file his petition immediately following the SVP determination. Br. of Resp't (State) in Franklin at 28 & n.7. Thus, the person committed as an SVP may either wait one year or may petition for consideration for release to an LRA after a period of time considerably shorter than one year.

The SVP statute would seem to similarly afford a flexible period of time *before* the commitment trial for the alleged SVP to be evaluated for suitability for release to an LRA. The statute provides a 45-day period between the probable cause hearing and the commitment trial in which the alleged SVP is transferred to an appropriate facility for evaluation as to whether he is an SVP. RCW 71.09.040(4), .050(1). However, the "trial may be continued upon the

request of either party and a showing of good cause." RCW 71.09.050(1). Thus, although the State argues that an unspecified "period of time" is necessary for the proper evaluation of a person for release to an LRA, the SVP statute provides a procedure which allows the State to request the court to grant the State as much additional time as it justifiably needs to properly evaluate the person. We find no reason why the statute does not allow for sufficient time to evaluate the confined person *before* the commitment trial as well as after. The only differences in the timing of LRA consideration are in the length of the default period and in the degree of court supervision. Before the trial the period of evaluation is 45 days plus any additional time approved by the court. After the trial the period of evaluation is usually one year unless the SVP files a petition for release, in which case the period may be substantially less than one year.

Because we find that the SVP statute allows for a sufficient period of time both before and after the commitment trial for a proper evaluation of whether a committed person may safely be released to an LRA, we do not agree with the State that consideration of LRAs only after the commitment trial provides any greater protection to the public than consideration prior to the trial. We do not recognize that there is a rational relationship between the timing of LRA consideration and greater public safety, and thus the SVP statute's disparate treatment of persons committed under it fails rational basis scrutiny.

As we did in *Young* when we found an equal protection violation, we remand Brooks' and Franklin's cases for new commitment trials at which LRAs to confinement may be considered. The court or jury may hear evidence concerning LRAs and may determine whether treatment in an LRA is in the best interest of the alleged SVP. If, however, the court or jury determines that he should be released to an LRA, the court has no power to order placement in an LRA. *See* LAWS OF 2001, ch. 286, § 8. Continuing to confine the person violates equal protection. The only remaining alternative is

unconditional release. Therefore if the finder of fact determines that treatment in an LRA is in the best interest of the person, he shall be unconditionally released from confinement, there being no authority to order placement in an LRA. Only the Legislature can provide the court with jurisdiction to order an LRA under such circumstances, and it has not done so.

The State is entitled, however, to an instruction which informs the jury the court has no authority to order the defendant into an LRA or to undergo treatment in an LRA. The State may not argue, and is not entitled to an instruction, to the effect that no LRA can exist because the court has no power to order such placement and treatment.

## III

Although we decide this case on equal protection grounds related to the consideration of LRAs, we must also consider Brooks' other constitutional claim. Brooks argues that the "more likely than not" standard for proving dangerousness in chapter 71.09 RCW is unconstitutional and not narrowly tailored. Brooks' Pet. for Review at 19. Since *Addington v. Texas*, 441 U.S. 418, 99 S. Ct. 1804, 60 L. Ed. 2d 323 (1979), requires the application of the "clear, cogent, and convincing" standard in mental illness commitment cases, it would violate equal protection to permit a lower standard in predator commitment cases. Brooks' Pet. for Review at 20 n.9. Brooks claims that even with a beyond a reasonable doubt standard for proving a person is an SVP, the more likely than not standard for proving dangerousness allows for the commitment of a person on evidence showing only a 25 percent likelihood of reoffense. *Id.* at 19. The 25 percent figure is Brooks' estimate based on a 62 percent accuracy in predicting sexual recidivism. *Id.* at 16, 18. Brooks implies that in order for the statute to meet the "clear and convincing" evidence requirement in *Addington*, a "highly probable" standard instead of "more likely than not" is necessary. *See In re Dependency of K.R.*, 128 Wn.2d

129, 141, 904 P.2d 1132 (1995). The Court of Appeals rejected Brooks' arguments. *See In re Det. of Brooks*. 94 Wn. App. at 724-28.

Because the Washington SVP statute is identical to Kansas' statute with respect to this issue and because the United States Supreme Court has approved of Kansas' law in *Kansas v. Hendricks*, 521 U.S. 346, 117 S. Ct. 2072, 138 L. Ed. 2d 501 (1997), a challenge to the constitutionality of Washington's statute on due process grounds cannot be sustained on this issue. Former RCW 71.09.020(1) defines an SVP as "any person who has been convicted of or charged with a crime of sexual violence and who suffers from a mental abnormality or personality disorder which makes the person *likely* to engage in predatory acts of sexual violence if not confined in a secure facility." (Emphasis added.) RCW 71.09.060(1) provides that "[t]he court or jury shall determine whether, beyond a reasonable doubt, the person is a sexually violent predator." Kansas' definition of "sexually violent predator" at the time was " 'any person who has been convicted of or charged with a sexually violent offense and who suffers from a mental abnormality or personality disorder which makes the person *likely* to engage in the predatory acts of sexual violence.' " *Hendricks*, 521 U.S. at 352 (emphasis added) (quoting KAN. STAT. ANN. § 59-29a02(a) (1994)). The Kansas statute requires the trier of fact to determine beyond a reasonable doubt whether the defendant was an SVP. *Id.* at 353. The Court held that the Kansas Sexually Violent Predator Act comports with due process requirements. *Id.* at 371. Since the relevant portions of Washington's statute are identical to Kansas', there is no reason to believe that this State's statute falls short of the federal constitution's due process requirements.

Notwithstanding *Hendricks*, Brooks appears to assert an equal protection challenge to chapter 71.09 RCW based upon *Addington*. Brooks argues that because *Addington* requires application of the "clear, cogent, and convincing" standard in mental illness commitment cases, permitting a

lower standard in sexual predator commitment cases would violate equal protection. Brooks' Pet. for Review at 20 n.9. Citing *In re Dependency of K.R.*, 128 Wn.2d at 141, Brooks says that in Washington case law "clear, cogent, and convincing" evidence exists when the fact in issue is shown to be "highly probable." Brooks' Pet. for Review at 19. Since the likelihood of Brooks' reoffense is merely more likely than not rather than "highly probable," Brooks contends former RCW 71.09.020(1) falls short of the required standard.

*Addington*, however, actually requires a lower standard of proof than provided in Washington's SVP statute. "Beyond a reasonable doubt" is a higher standard of proof than "clear, cogent, and convincing." Less apparent is that the fact to be proved in *Addington*'s mental illness commitment statute and in Washington's SVP statute is a prediction of the same level of statistical probability: more likely than not, that is, more than 50 percent. In order for a trier of fact to determine that someone is an SVP, that person must be found to be "likely to engage in predatory acts of sexual violence if not confined in a secure facility." Former RCW 71.09.020(1). The fact to be proved in Texas' mental illness commitment statute is not couched in terms of a probability determination: " 'whether [the proposed patient] requires hospitalization in a mental hospital for his own welfare and protection or the protection of others.' " *Addington*, 441 U.S. at 420 (quoting TEX. REV. CIV. STAT. ANN. art. 5547-51(2) (Vernon 1958)). As applied, however, the statute requires the trier of fact to determine *probable* dangerousness. The two psychiatrists who testified in *Addington* "expressed medical opinions that appellant was probably dangerous both to himself and to others." *Id.* at 421. The appellant attempted to rebut this testimony: "What appellant attempted to show was that there was no substantial basis for concluding that he was probably dangerous to himself or others." *Id.* In its analysis of civil commitment statutes generally the Supreme Court described the fact to be determined in such cases as "probable dangerousness": "it

is indisputable that involuntary commitment to a mental hospital after a finding of probable dangerousness to self or others can engender adverse social consequences to the individual." *Id.* at 425-26. A determination of probable dangerousness in the context of commitment for mental illness requires the equivalent level of statistical probability as does a determination of the likelihood of an SVP's reoffending. Because chapter 71.09 RCW and the Texas civil commitment statute require factual determinations—likelihood of reoffense and probable dangerousness—expressed as statistical probabilities and require the same level of probability for each determination, Washington's SVP statute does not fall short of the Texas law analyzed in *Addington*. Since Washington's statute, which establishes a beyond a reasonable doubt standard of proof, also satisfies the holding in *Addington* that the standard of proof in civil commitment proceedings be greater than the preponderance of the evidence standard, chapter 71.09 RCW does not in any respect fall below the standards set by the Court in *Addington*. Therefore, *Addington* does not support Brooks' equal protection claim.

Finally, chapter 71.09 RCW does not fall below the rule set forth in *In re Dependency of K.R.* and other cases that "clear, cogent, and convincing" evidence must be "highly probable." The statute appears to fall short only if one mistakenly understands "highly probable" as applying to the fact to be proved rather than to the standard of proof demanded. The fact to be proved with respect to the SVP statute is expressed in terms of a statistical probability. Brooks' citation of a passage from a leading work on SVPs is helpful in illustrating this kind of probability: "When a physician states, 'You have an 80% chance of survival,' it actually means, 'Of all the people like you who get this disease, 80% survive.'" VERNON L. QUINSEY ET AL., VIOLENT OFFENDERS: APPRAISING AND MANAGING RISK 180 (1998); Brooks' Pet. for Review at 15. Applying this notion to the SVP statute yields this: when an expert testifies that a person has a likelihood of reoffending, it means that of the persons

who suffer from this mental abnormality or personality disorder, more than 50 percent will engage in predatory acts of sexual violence if not confined in a secure facility. Of 100 similarly afflicted offenders, more than 50 would reoffend if not so confined.

Probability with respect to the standard of proof is a measure of the subjective belief of the trier of fact. "The function of a standard of proof, as that concept is embodied in the Due Process Clause and in the realm of factfinding, is to 'instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication.'" *Addington*, 441 U.S. at 423 (quoting *In re Winship*, 397 U.S. 358, 370, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970) (Harlan, J., concurring)). For example, the beyond-a-reasonable-doubt standard " 'impresses on the trier of fact the necessity of reaching a subjective state of certitude of the facts in issue.'" *Winship*, 397 U.S. at 364 (quoting Norman Dorsen & Daniel A. Rezneck, *In Re Gault and the Future of Juvenile Law*, 1 FAM. L. Q. 1, 26 (1967)). "[A]ll the factfinder can acquire is a belief of what *probably* happened. . . . Although the phrases 'preponderance of the evidence' and 'proof beyond a reasonable doubt' are quantitatively imprecise, they do communicate to the finder of fact different notions concerning the degree of confidence he is expected to have in the correctness of his factual conclusions." *Id.* at 370 (Harlan, J., concurring).

Thus, when *In re Dependency of K.R.* states that "[c]lear, cogent, and convincing evidence exists when the ultimate fact in issue is shown by the evidence to be ' "highly probable," ' " this court is commenting upon the degree of confidence the trier of fact should have in the correctness of its factual conclusions rather than requiring a certain level of statistical probability. *In re Dependency of K.R.*, 128 Wn.2d at 141 (quoting *In re Welfare of Sego*, 82 Wn.2d 736, 739, 513 P.2d 831 (1973) (quoting *Supove v. Densmoor*, 225 Or. 365, 358 P.2d 510 (1961))). RCW 71.09.060(1)'s demand that the court or jury determine beyond a reasonable doubt

that a defendant is an SVP means that the trier of fact must have the subjective state of certitude in the factual conclusion that the defendant more likely than not would reoffend if not confined in a secure facility. As set out in the statute, the fact to be determined is not whether the defendant will reoffend, but whether the probability of the defendant's reoffending exceeds 50 percent. As long as the SVP statute requires the fact finder to have the subjective belief that it is at least highly probable that the defendant is likely to reoffend, it meets the standard set forth in *In re Dependency of K.R.* Chapter 71.09 RCW meets and exceeds that standard. Brooks' constitutional claims fail, and the Court of Appeals rejection of those claims is affirmed, though on different grounds.

Like Brooks, Franklin presents a due process challenge to the statute. Appellant's Opening Br. at 9-12. He argues that substantive due process requires that LRAs be considered at the commitment trial. In view of our resolution of this case on equal protection grounds, we do not need to reach this issue.

Brooks also raises the issue of whether the judgment committing Brooks should be vacated on the grounds that the State's expert witness falsified his qualifications. Because this court has vacated the judgment on other grounds, we need not reach this issue.

█ Brooks' motion to permit supplementation of the record, passed to the merits, is denied because it does not meet the requirements of RAP 9.11(a)(2); the additional evidence would probably not change the decision being reviewed.

## CONCLUSION

We vacate the order committing Brooks as an SVP and remand his case for a commitment trial under chapter 71.09 RCW, consistent with this opinion. We also vacate the order committing Franklin as an SVP and remand his case for a commitment trial under chapter 71.09 RCW, consis-

tent with this opinion. We affirm the Court of Appeals decision with respect to its rejection of Brooks' claims that chapter 71.09 RCW is unconstitutional because it allows a standard of proof that violates equal protection and due process.

ALEXANDER, C.J., and SMITH, JOHNSON, and BRIDGE, JJ., concur.

SANDERS, J. (concurring/dissenting) — I agree relieving the State of its obligation to prove that the prisoner could not be safely confined to a less restrictive alternative (LRA) at a chapter 71.09 RCW commitment trial violates equal protection. However I disagree that the jury should be instructed that the court lacks authority to order confinement to an LRA, and I further disagree that the State satisfies its constitutionally minimum burden to justify confinement when the question presented to the jury is merely whether the defendant is "likely" to reoffend if not so confined.

I.   Instruction on Court's Lack of Authority to Order LRA

The majority asserts, without benefit of citation or analysis, the State is entitled to "an instruction which informs the jury the court has no authority to order the defendant into an LRA or to undergo treatment in an LRA." Majority at 293. Although this is an accurate statement of the law, it defeats the purpose of a proper instruction, which is "to furnish guidance to the jury in its deliberations." *State v. Allen*, 89 Wn.2d 651, 654, 574 P.2d 1182 (1978). It fails to furnish guidance because, as the majority has determined, the court's ability to order an LRA is irrelevant to the factual determination of whether or not the individual could be safely placed in an LRA, regardless of whether or not one actually exists. Not only does the instruction fail to furnish guidance helpful to the jury's performance of its duties, it affirmatively misdirects the attention of the jury to a legal circumstance which is irrelevant to its deliberation, and consideration of which is prejudicial to the rights

of the defendant. Such an instruction can serve no purpose other than invite the jury to require incarceration because no LRA is available to the court.

## II. Standard of Proof

RCW 71.09.060(1) provides: "The court or jury shall determine whether, beyond a reasonable doubt, the person is a sexually violent predator." A "sexually violent predator" is defined as a person:

(1) who has been convicted of or charged with a crime of sexual violence;

(2) who suffers from a mental abnormality or personality disorder; and

(3) whose mental abnormality or personality disorder makes him *likely* to engage in predatory acts of sexual violence if not confined in a secure facility.

*See* former RCW 71.09.020(1) (1995) (emphasis added). The standard of proof as to elements (1) and (2) are not being disputed, only element (3).

The majority would allow a jury to discharge its duty in an illusory manner by inviting it to find, *beyond a reasonable doubt,* the defendant possesses a mental abnormality or personality disorder which makes him *likely* to engage in predatory acts of sexual violence. The fly in the ointment is the instruction's failure to require the jury to find a fact rather than consider a probability. If a mere probability were sufficient the jury would be asked to determine by a *preponderance of the evidence* that the individual *would* engage in predatory acts of sexual violence.

At civil commitment trials, like the proceeding here, the United States Constitution has been construed to require proof by at least clear, cogent, and convincing evidence. *Addington v. Texas*, 441 U.S. 418, 431, 99 S. Ct. 1804, 60 L. Ed. 2d 323 (1979). However the proof so required is to establish a fact, not a probability.

The majority claims this illusory standard passes constitutional muster under *Kansas v. Hendricks*, 521 U.S. 346, 117 S. Ct. 2072, 138 L. Ed. 2d 501 (1997) because Kansas

passed a similar statute which withstood constitutional challenge. However, the majority's analysis is obviously deficient because our particular question was never presented, much less decided, by the Supreme Court in *Hendricks*. Rather the issue in *Hendricks* was whether Kansas's statutory definition of "mental abnormality" satisfied substantive due process. 521 U.S. at 356. "Mental abnormality" corresponds to one element of proof under our sexually violent predator statute, but not the element at issue here. The Supreme Court never addressed the question of whether the term "likely" in the Kansas statute unconstitutionally diminishes the overall standard of proof. In fact that Court never addressed any standard of proof issue at all.

On the other hand, *Addington* clearly holds that the constitutionally minimum standard of proof at civil commitment trials is proof by clear, cogent, and convincing evidence, or clear and convincing evidence. There the Supreme Court concluded, "[T]he individual's interest in the outcome of a civil commitment proceeding is of such weight and gravity that due process requires the state to justify confinement by proof more substantial than a mere preponderance of the evidence." *Addington*, 441 U.S. at 427. Furthermore:

> Having concluded that the preponderance standard falls short of meeting the demands of due process and that the reasonable-doubt standard is not required, we turn to a middle level of burden of proof that strikes a fair balance between the rights of the individual and the legitimate concerns of the state.

*Id*. at 431 (leaving it to the states to determine whether to employ, at a constitutional minimum, the standard of "clear and convincing evidence" or "clear, cogent, and convincing evidence").

The majority believes the Texas statute at issue in *Addington* contains the same standard of proof on dangerousness as in element (3) of our sexually violent predator statute (i.e., "likely") and therefore our statute overall meets the standard set forth in *Addington*. *See* majority at

295-96. However unlike the use of "likely" in former RCW 71.09.020(1) and "beyond a reasonable doubt" in RCW 71.09.060, the Texas statute contained *no* standard of proof. The Texas statute required the fact finder to determine " 'whether [the defendant] requires hospitalization in a mental hospital for his own welfare and protection or the protection of others.' " *Addington*, 441 U.S. at 420 (quoting TEX. REV. CIV. STAT. ANN. art. 5547-51(2) (Vernon 1958)). This required proof that the defendant will *in fact* harm himself or others if not confined. It did not require proof of *probable* harm or "likely" harm as does our statute. Thus, when the Supreme Court stated the Constitution requires a standard of proof by clear, cogent, and convincing evidence, that meant the Texas statute had to require proof at least by clear, cogent, and convincing evidence that the defendant will *in fact* harm himself or others if not confined, not proof by clear, cogent, and convincing evidence that there is a "likelihood" he will.

Notwithstanding the clarity of the Texas statute and the *Addington* holding, the majority believes that "as applied" the Texas statute is just like our statute because it required proof of "*probable* dangerousness." Majority at 295. The majority points out (1) two psychiatrists provided testimony that the defendant was probably dangerous, (2) the defendant attempted to rebut this testimony, and (3) the Supreme Court used the words "probable dangerousness" in one sentence describing civil commitment statutes generally. Majority at 295-96. I submit the testimony of two psychiatrists, one party's argument, and one general sentence in a federal court opinion shed little light, if any, on the meaning of Texas law "as applied."

Instead we should look to Texas law.[3] As discussed above, the Texas statute itself was clear and did not refer to probable or likely harm—it required proof of actual harm to self or others. Moreover Texas cases interpreting that

---

[3] Specifically, to Texas law interpreting TEX. REV. CIV. STAT. ANN. art. 5547-51(2) (Vernon 1958) after *Addington* but before the Texas legislature later amended the statute.

statute after *Addington* did not apply it as requiring proof of probable or likely harm—they applied it to require proof of actual harm. *See, e.g., Lodge v. State*, 597 S.W.2d 773, 778-79 (Tex. Ct. App. 1980). The majority's belief the Texas statute "as applied" has a different meaning than what it says has no foundation. Its reliance on *Addington* as an opinion interpreting a statute similar to ours is misplaced. The statutes are not the same—either expressly or as applied. Accordingly, while *Addington* established the overall constitutional standard of proof, it does not dictate that our sexually violent predator statute meets this standard.

III. The Washington Sexually Violent Predator Statute Does Not Meet the Constitutional Minimum Standard of Proof in *Addington*.

As construed by the majority the standard of proof in our sexually violent predator statute falls short of requiring the constitutionally minimum clear, cogent, and convincing evidence. For that matter when "beyond a reasonable doubt" in RCW 71.09.060 and "likely" in former RCW 71.09.020(1) are conflated the overall standard of proof is even lowered to *below* a preponderance. This does not pass constitutional muster.

The majority restates the standard as follows:

the trier of fact must have the subjective state of certitude [beyond a reasonable doubt] in the factual conclusion that the defendant more likely than not would reoffend if not confined in a secure facility. As set out in the statute, the fact to be determined is not whether the defendant will reoffend, but whether the probability of the defendant's reoffending exceeds 50 percent.

Majority at 298. To begin, the majority imprecisely rewords the third element of the statute. Element (3) does not require proof merely that the defendant will likely reoffend; it requires proof that the defendant's *mental abnormality or personality disorder will make him likely to reoffend.* Former RCW 71.09.020(1).

More important to our inquiry here, however, is that the majority's rewording of the statute makes the constitutional violation clear. An *objective* state of certitude (a 100 percent certainty) that there is more than a 50 percent chance ("it is likely") the defendant's abnormality or disorder will cause him to reoffend simply requires the State to prove it is likely the defendant's abnormality or disorder will cause him to reoffend. This requires a mere preponderance, and a preponderance standard requires less of a showing than proof by clear, cogent, and convincing evidence—the constitutional minimum.

The majority does not even require proof to a 100 percent certainty of a more than 50 percent probability; it requires the lesser showing of proof beyond a reasonable doubt of this likelihood.

The majority's rationale entirely rests on the myopic distinction between the ultimate standard of proof and the "fact to be proved" or the "fact to be determined." *See generally* majority at 295-98. Because the standard of proof in commitment trials is proof beyond a reasonable doubt and the "fact to be proved" is element (3) of former RCW 71.09.020(1), the majority simply concludes our statute satisfies *Addington*. Majority at 296. However, this reasoning obscures the issue here where the "fact" to be proved is the defendant's mental abnormality or personality disorder makes him *likely* to reoffend.

Consider the majority's rationale in another context. Let us assume the legislature amended the first degree murder statute to require proof that the defendant *likely* had premeditation, *likely* had intent, and *likely* caused the death of another without justification—all "facts to be proved" according to the majority. Let us also assume the legislature maintained the requirement that the elements of first degree murder be proved beyond a reasonable doubt. Under the majority's reasoning, the amendment would be constitutional because the standard of proof would remain beyond a reasonable doubt; only the "facts to be proved" have changed. I submit that, by requiring proof only of *likely* premeditation, *likely* intent, and *likely* causation, the

state would have to come forth with significantly less evidence to prove its case than under the current first degree murder statute. In no sense would the overall standard of proof in fact be the same.

IV. Conclusion

It is improper to instruct the jury that the court lacks authority to order confinement to a less restrictive alternative.

Moreover, to be constitutional, the sexually violent predator statute must require, at a minimum, proof by clear, cogent, and convincing evidence the defendant's mental abnormality or personality disorder *will* cause him to reoffend. Proof beyond a reasonable doubt the defendant's mental abnormality or personality disorder will *likely* cause him to reoffend requires significantly less of a showing than the Constitution requires.

Therefore I dissent.

IRELAND, J. (dissenting) — I agree with the majority in its rejection of Brooks' claim that the sexually violent predator statute, chapter 71.09 RCW, violates due process and equal protection because it allows for commitment on a showing below what is constitutionally required. However, I would also affirm the Court of Appeals' decision that the Legislature has a rational basis for creating a different point in the commitment procedure for consideration of less restrictive alternatives (LRAs) to confinement as between those committed under chapter 71.09 RCW and those committed under chapter 71.05 RCW, the mental illness statute. Therefore, I dissent.

By focusing on the time required for a determination of whether one can be treated with conditions, the majority has missed the essential difference between the proceedings under chapter 71.05 RCW and chapter 71.09 RCW. The rational basis for the Legislature's distinction concerns the very definition of a sexually violent predator as opposed to someone who is mentally ill. By its recent amendments, the

Legislature has clarified that a person who can receive voluntary treatment options that exist if the person is unconditionally released from detention does not meet the definition of a sexually violent predator. RCW 71.09.020(12) states:

> "Sexually violent predator" means any person who has been convicted of or charged with a crime of sexual violence and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility.

Therefore, there is no denial of equal protection because the definition of "sexually violent predator" is not at issue in a proceeding conducted under chapter 71.05 RCW.

It is appropriate to be able to put on evidence of treatment which is available to a person who is unconditionally released because such evidence goes to the determination of whether the person is a sexually violent predator. If a person can be treated voluntarily on unconditional release, the person is not, by definition, a sexually violent predator. It is inappropriate to offer evidence of what treatment would be available on a conditional release because it is not relevant to the determination of whether the person may be committed. It is no more a denial of equal protection to preclude evidence of court-ordered LRAs at the hearing to determine whether a person meets the definition of a sexually violent predator than it is to preclude the person from putting on evidence that he or she is *not* gravely disabled. Nor would it be a denial of equal protection to preclude a person in a chapter 71.05 proceeding from putting on evidence that he or she is not likely to engage in predatory acts of sexual violence if not confined to a secure facility. The inquiry is different for each proceeding, and there is a rational basis for the difference based on the Legislature's different definitions of one who is mentally ill and one who is a sexually violent predator.

The majority applied the rational basis standard without determining whether a heightened scrutiny standard should apply, finding that the result would be the same under either analysis. Majority at 289.

We have held that the commitment of the mentally ill under chapter 71.05 requires consideration of LRAs to total confinement and that, *without a valid reason to do so*, the State cannot provide different procedural protections for those confined under chapter 71.09. *In re Pers. Restraint of Young*, 122 Wn. 2d 1, 47, 857 P.2d 989 (1993). Following our decision in *Young*, the Legislature amended chapter 71.09 to allow the court to consider LRAs *after* the person has been adjudicated a sexually violent predator.

As the Court of Appeals noted, "Under the rational basis test, a classification is valid if it rests upon a legitimate state objective and is not wholly irrelevant to achieving that objective." *In re Det. of Brooks*, 94 Wn. App. 716, 721, 973 P.2d 486 (1999) (citing *In re Pers. Restraint of Stanphill*, 134 Wn.2d 165, 175, 949 P.2d 365 (1998); *State v. Manussier*, 129 Wn.2d 652, 673, 921 P.2d 473 (1996)).

"In ascertaining whether a rational relationship exists, we may assume the existence of any necessary state of facts which we can reasonably conceive." *Brooks*, 94 Wn. App. at 721 (citing *Seeley v. State*, 132 Wn.2d 776, 795, 940 P.2d 604 (1997)).

Although the majority identified the proper standard, it did not apply that standard. Rather, the majority substituted its own judgment for that of the Legislature.

In reviewing the constitutional adequacy of involuntary commitment proceedings, we "balance the extent of the individual's interest against the interests of the State." *Young*, 122 Wn.2d at 44. As the Court of Appeals observed, the interest of the State in treating sex offenders and protecting society from their actions "is not only legitimate, it is irrefutably compelling." *Brooks*, 94 Wn. App. at 721-22 (citing *Young*, 122 Wn.2d at 26).

The *Young* court stated as follows:

> It is important to note at the outset that there are good reasons to treat mentally ill people differently than violent sex offenders. *See People v. Pembroke*, 62 Ill. 2d 317, 322, 342

N.E.2d 28 (1976) (A sexually dangerous person "creates different societal problems, and his past conduct is different in degree and kind from the conduct of persons in the larger, more inclusive class defined under the Mental Health Code.").

*Young*, 122 Wn.2d at 44-45.

In 1995, an amendment to the sexually violent predator statute narrowed the definition of "sexually violent predator" to "any person who has been convicted of or charged with a crime of sexual violence and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in predatory acts of sexual violence *if not confined in a secure facility*." Former RCW 71.09.020(1) (1995) (emphasis added). The italicized language was added by the amendment.

Since the 1995 amendment, only those persons likely to reoffend if not confined in a secure facility meet the definition of sexually violent predators. In reliance on this narrowed definition, the Court of Appeals held:

> Thus, it is rational to impose total confinement before undertaking consideration of whether a less restrictive treatment program is a viable option. The greater dangerousness and different treatment requirements posed by sexually violent predators provide a rational basis for allowing consideration of less restrictive alternatives only after the person has been confined in a secure facility.

*Brooks*, 94 Wn. App. at 722-23.

Division Two of the Court of Appeals arrived at a different result, on different grounds than the equal protection argument of *Brooks*, in considering the issue of whether the defendant should be able to put on evidence of LRAs at the commitment hearing. *In re Det. of Ross*, 102 Wn. App. 108, 6 P.3d 625 (2000); majority at 283.

In response to *Ross*, the Legislature again amended the sexually violent predator statute in 2001 to make it clear that the court has no authority to order LRAs at a commitment hearing and that the fact finder may not consider LRAs at a probable cause or commitment trial. Majority at 283-84.

The majority recognizes that the Legislature has given the court no authority to order LRAs at the commitment trial but concludes that, unless evidence of LRAs which a detainee might undertake *voluntarily* is permitted, equal protection is violated. The majority would allow the jury to be informed that the court has no authority to order the defendant into an LRA or to undergo treatment in an LRA. The jury is required to unconditionally free the detainee if it thinks he or she could be voluntarily treated in the community, since that person would not meet the definition of sexually violent predator.

The majority finds no rational basis to support the Legislature's requirement that a person found to be a sexually violent predator first be committed and subject to annual assessment before the court may order LRAs. The majority finds no public safety issue because a person subject to a commitment proceeding must be jailed before the trial, if not already incarcerated. Majority at 290-91.

Next, the majority finds no rational basis for requiring the detainee to be in treatment for one year until an annual assessment can be made, finding that the 45-day pretrial period is sufficient for evaluation and that the court has authority to extend the 45 days to "any additional time approved by the court." Majority at 291-92. Here, the majority is simply substituting its own view of a sufficient time for evaluation of amenability to LRAs for that which the Legislature has imposed. Such substitution of judgment invades the prerogative of the Legislature and violates separation of powers.

A mere difference of opinion between the majority and the Legislature over whether 45 days "plus any additional time approved by the court" or one year (time of the annual report) is appropriate is the very kind of decision which should be left to the legislative branch. It can hardly be said that such a difference of opinion rises to the level of a basis to find the legislation unconstitutional by the required standard of *beyond a reasonable doubt*.

In *Island County v. State*, we made the following statement regarding this court's evaluation of legislative enactments:

> [T]he "beyond a reasonable doubt" standard used when a statute is challenged as unconstitutional refers to the fact that one challenging a statute must, by argument and research, convince the court that there is no reasonable doubt that the statute violates the constitution. The reason for this high standard is based on our respect for the legislative branch of government as a co-equal branch of government, which, like the court, is sworn to uphold the constitution. We assume the Legislature considered the constitutionality of its enactments and afford some deference to that judgment. Additionally, the Legislature speaks for the people and we are hesitant to strike a duly enacted statute unless fully convinced, after a searching legal analysis, that the statute violates the constitution.

*Island County v. State*, 135 Wn.2d 141, 147, 955 P.2d 377 (1998).

I would affirm the Court of Appeals.

MADSEN, J., concurs with IRELAND, J.

Reconsideration denied March 12, 2002.