[No. 63222-1-I. Division One. August 9, 2010.]

*In the Matter of the Detention of* CHRISTOPHER MULKINS, *Appellant.*

*Lila J. Silverstein* (of *Washington Appellate Project*), for appellant.

*Daniel T. Satterberg, Prosecuting Attorney*, and *David J.W. Hackett, Deputy*, for respondent.

¶1 GROSSE, J. — A respondent in a sexually violent predator (SVP) proceeding is not entitled to present evidence that he or she may be eligible to participate in the Community Protection Program (CPP) unless the evidence establishes that this option would in fact exist for the respondent as a placement condition or voluntary treat-

ment option upon an unconditional release. Here, the respondent failed to show that he was actually accepted into and agreed to participate in the program upon his release; he simply presented a letter indicating that he was a potential candidate for the program. Consequently, he lacks standing to challenge the constitutionality of a provision of RCW 71.09.060 that prevents the fact finder in an SVP proceeding from considering the CPP as a placement option upon the respondent's release. Accordingly, we affirm the order of commitment.

## FACTS

¶2 As a child, Christopher Mulkins was found guilty of child molestation in the first degree. He was later convicted of third degree child molestation as an adult. On December 26, 2001, while serving his sentence for the adult conviction, he received a letter from the Department of Social and Health Services (DSHS) informing him that he had been identified as a person "who may present a risk of committing an offense against a person." The letter further stated:

> Your name is now on a database called the Community Protection Database. The information is used by the division for identification and planning, and is not made available to the public.
>
> This could affect the services you are receiving or may receive in the future. If you would like to meet with your case manager to discuss the database and the [CPP], please [contact a case resource manager].

The CPP is a state funded program that provides 24-hour supervision of developmentally disabled individuals who have committed serious crimes and served their prison time or who have committed crimes but were not charged or found incompetent to stand trial. In addition to providing supervision, the program provides treatment and other living support. The program is voluntary and participants may refuse services and live without support or supervision.

¶3 On December 29, 2003, before Mulkins was released from prison, the State filed a petition to commit him as an SVP. In pretrial motions for the commitment trial, Mulkins sought to introduce evidence of his eligibility to participate in the CPP to rebut the State's evidence that he was likely to reoffend if not committed, and challenged the constitutionality of a provision of RCW 71.09.060 that excludes consideration of the CPP in the SVP determination. Mulkins also challenged RCW 71.09.020, which provides for commitment based on a finding that the defendant is "likely" to reoffend, as violating due process. The trial court denied both motions. At trial, the State presented evidence that from an early age, Mulkins had severe behavioral problems, including sexual aggressiveness, which led to his placement in a residential mental health treatment facility for juveniles. He was then transferred to various foster homes where he repeatedly exhibited sexually aggressive behavior. During this time, Mulkins continued to sexually offend against other children even under strict supervision.

¶4 The State also presented a history of multiple sex offenses committed by Mulkins as a child that were never reported or prosecuted, but to many of which he admitted. This included his admission to molesting and raping young boys and girls. Some of these incidents were referred for criminal investigation, but charges were not filed due to his age.

¶5 He was finally charged as a juvenile with first degree molestation for molesting a 7-year-old boy in a public bathroom. He violated his release conditions by sexually acting out and then pleaded guilty to the charge and was committed to Juvenile Rehabilitation Administration (JRA). After assaulting JRA staff, he was sent to Echo Glen, where he engaged in sexually inappropriate behavior against the other residents. He was then released to a foster home but, after a few weeks, was moved again to a high security home after exposing himself to young boys.

¶6 Despite the high security measures at this home, Mulkins offended again against an 11-year-old boy who was

also a resident at the home. He was charged and convicted of first degree molestation. While awaiting disposition on this case, he admitted to having molested two disabled students at Federal Way High School and was sanctioned for one of those incidents as a violation of his parole. While in the custody of JRA for this offense, he continued to act sexually aggressive toward the other residents and assaulted JRA staff.

¶7 Mulkins was eventually convicted of a third charge of child molestation for fondling a boy who was a resident at JRA. He was sentenced as an adult to the Department of Corrections (DOC). While in the custody of DOC, he committed infractions for sexual behavior, despite his participation in a sex offender treatment program. After the State filed the SVP petition, he was transferred to the Special Commitment Center, where his sexually aggressive behavior continued.

¶8 The State also presented expert testimony from Dr. Leslie Rawlings, who conducted an assessment of Mulkins to determine if he met the SVP criteria. Rawlings concluded Mulkins' mental abnormalities predisposed him to commit sexual acts that endangered the health and safety of others and that he was likely to engage in predatory acts of sexual violence if not confined to a secure facility. He further opined that the fact that Mulkins continued to offend despite such close supervision indicated the strength of his sexual interest in children. Mulkins presented the expert testimony of Dr. Douglas Boer, who found significant that the sexually violent offenses were committed when he was a child himself and developmentally disabled and concluded that a pedophilia diagnosis was improper.

¶9 The jury found that Mulkins met the criteria for an SVP. Based on this finding, the trial court ordered him civilly committed. Mulkins appeals.

## ANALYSIS

¶10 To support a finding that a respondent is an SVP, a jury must determine that the respondent is one "who has

been convicted of or charged with a crime of sexual violence and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility."[1] To determine the respondent's risk of reoffense if not confined, the jury may consider the existence of placement conditions and voluntary treatment options available to the respondent upon release, as provided in RCW 71.09.060(1):

> In determining whether or not the person would be likely to engage in predatory acts of sexual violence if not confined in a secure facility, the fact finder may consider only placement conditions and voluntary treatment options that would exist for the person if unconditionally released from detention on the sexually violent predator petition. The community protection program under RCW 71A.12.230 may not be considered as a placement condition or treatment option available to the person if unconditionally released from detention on a sexually violent predator petition.

¶11 Mulkins challenges the constitutionality of RCW 71.09.060(1), contending that by preventing him from presenting evidence that the CPP was an available placement option for him upon release, the statute prohibited him from rebutting the State's evidence that he was likely to reoffend if not committed. As a result, he contends, this statutory provision denied him a meaningful opportunity to be heard before depriving him of his liberty and therefore violated his right to due process.

¶12 A statute is presumed constitutional, and the party challenging it bears the burden of proving it is unconstitutional beyond a reasonable doubt.[2] But unless First Amendment freedoms are involved, this court will determine whether a statute is unconstitutional only as

---

[1] RCW 71.09.020(18).

[2] *In re Pers. Restraint of Young*, 122 Wn.2d 1, 26, 857 P.2d 989 (1993).

applied to the facts of the case.[3] Here, Mulkins' constitutional challenge alleges violations of due process, not First Amendment rights.[4] Accordingly, we consider Mulkins' constitutional challenge only as applied to the facts of his case. We agree with the State that the statutory provision he challenges does not apply in his case because he fails to establish that the CPP is a condition that in fact "would exist" for him upon release.

■ ¶13 As set forth above, RCW 71.09.060(1) permits the fact finder to consider "only placement conditions and voluntary treatment options that *would exist* for the person if unconditionally released from detention on the sexually violent predator petition."[5] Our courts have construed the language "would exist" to mean conditions "that would actually exist" if the respondent was released from custody, not hypothetical evidence.[6] Thus, the statutory provision that excludes evidence of the CPP applies to adversely affect Mulkins only if the CPP is an option that would exist for him upon his release.

■ ¶14 Mulkins asserts that the CPP is an existing option for him, relying on the letter from DSHS and noting that offenders who have been identified by DSHS as meeting the criteria for the program are notified by the form letter that was sent to him. But at most, this letter only indicated that he was identified as a potential candidate for the program and directed him to follow up with his case manager if he was interested in the program. Mulkins points to nothing else in the record establishing that he has in fact been through the application process, has been accepted as a suitable candidate for the program, and has

---

[3] *State v. Carver*, 113 Wn.2d 591, 599, 781 P.2d 1308 (1989).

[4] He further challenges the statute as violating the separation of powers doctrine.

[5] (Emphasis added.)

[6] *State v. Harris*, 141 Wn. App. 673, 680, 174 P.3d 1171 (2007).

agreed to participate in the program.[7] Without further information about his actual placement in the program, Mulkins fails to establish that the CPP is an option that in fact "would exist" for him upon his release. Thus, even if evidence of the CPP were admissible under the statute, he fails to show that it would be admissible in his case. He therefore cannot demonstrate that, by excluding evidence of the CPP, RCW 71.09.060(1) applies to adversely affect his case. Accordingly, he lacks standing to challenge its constitutional validity.

■■ ¶15  We further reject Mulkins' constitutional challenge to RCW 71.09.020. He contends that the statute's "likely" to reoffend standard for determining whether a respondent is at risk for reoffense is inconsistent with the constitutionally required "clear and convincing" evidence standard. But as he acknowledges, our State Supreme Court has already rejected this argument in *In re Detention of Brooks*.[8] Accordingly, we are bound by that decision.

¶16  We affirm.

DWYER, C.J., and LEACH, J., concur.

Review denied at 170 Wn.2d 1032 (2011).

---

[7] According to the CPP "fact sheet" submitted by Mulkins, being identified as one who may pose a risk to others is only the initial step in the placement process:

> Once the case manager determines a client may pose a risk to others, DDD [(Division of Development Disabilities)] begins the process for assessment and referral to the [CPP]. The process includes a case review by the regional community protection committee. If the committee determines there is justification for an independent assessment, approval for a psycho-sexual or psycho-social evaluation is obtained from the client and/or guardian. Depending on the outcome of the risk assessment and the availability of funds, the client may be offered Community Protection Intensive Supported Living Services.

> All clients must sign a DSHS pre-placement agreement prior to being served in the [CPP]. It is a voluntary program and any participant can sign a refusal of services form and leave at any time.

[8] 145 Wn.2d 275, 36 P.3d 1034 (2001).